**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AKIO KAWASHIMA; FUSAKO
KAWASHIMA,
*Petitioners,*

v.

ALBERTO R. GONZALES, Attorney
General,
*Respondent.*

No. 04-74313

Agency Nos.
A38-554-590
A38-554-591

AKIO KAWASHIMA; FUSAKO
KAWASHIMA, aka Fusako Nakajima,
*Petitioners,*

v.

ALBERTO R. GONZALES, Attorney
General,
*Respondent.*

No. 05-74408

Agency Nos.
A38-554-590
A38-554-591

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 8, 2007—Pasadena, California

Filed September 18, 2007

Before: Diarmuid F. O'Scannlain, Edward Leavy, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

12503

## COUNSEL

Judith L. Wood, Law Offices of Judith L. Wood, Los Angeles, California, argued the cause for the petitioners, and filed briefs; Todd Beacraft, Law Offices of Judith L. Wood, Los Angeles, California, was on the briefs.

Nancy Freedman, Office of Immigration Litigation, Washington, DC, argued the cause for the respondent; Peter D. Keisler, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Assistant Director, and James A. Hunolt, Senior Litigation Counsel, Office of Immigration Litigation, Washington, DC, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to determine whether aliens' convictions for subscribing to a false statement on a tax return and

for aiding and assisting in the preparation of a false tax return qualify as "aggravated felonies" under the relevant immigration laws, and therefore constitute removable offenses.

I

Akio Kawashima and Fusako Kawashima[1] are natives and citizens of Japan. The Kawashimas were admitted to the United States as lawful permanent residents on June 21, 1984.

In a Notice to Appear dated August 3, 2001, the Service[2] alleged that Mr. Kawashima was subject to removal based on his 1997 conviction for subscribing to a false statement on a tax return, in violation of 26 U.S.C. § 7206(1). Another Notice of Removal, also dated August 3, 2001, alleged that Mrs. Kawashima was subject to removal based on her 1997 conviction for aiding and assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2). Both Notices alleged that the loss to the victim, the revenue loss to the government, exceeded $10,000, and that the Kawashimas were subject to removal because their convictions qualified as "aggravated felony" offenses, as defined in 8 U.S.C. § 1101(a)(43)(M)(i)-(ii) ("subsection (M)").

After holding a removal hearing, the IJ concluded that the Kawashimas' convictions were aggravated felonies. Accordingly, the IJ found the Kawashimas removable, denied their motion to terminate the proceedings, and ordered that they be removed to Japan.

---

[1]We refer to Akio as Mr. Kawashima and Fusako as Mrs. Kawashima. We refer to Akio and Fusako collectively as the "Kawashimas."

[2]On March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency under the U.S. Department of Justice and its functions were transferred to the Bureau of Immigration and Customs Enforcement within the newly-formed Department of Homeland Security. We refer to the INS and its successor as the "Service."

The Kawashimas appealed the IJ's decision, and the BIA remanded because the transcript containing the testimony of the hearing and the IJ's oral decision was defective. After further proceedings, the IJ again denied the Kawashimas' motion to terminate the proceedings and once again ordered the Kawashimas removed to Japan. The BIA affirmed without a separate opinion.

The Kawashimas subsequently filed a motion to reopen to seek waiver of inadmissibility under the Immigration and Nationality Act ("INA") § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). The BIA denied the motion as untimely.

The Kawashimas timely filed separate petitions for review of the BIA's affirmance of the IJ's removal order and the BIA's denial of the motion to reopen. We consolidated the petitions for review pursuant to 8 U.S.C. § 1252(b)(6).

## II

We are faced with the task of determining whether Mr. Kawashima's conviction for willfully making and subscribing to a false statement on a tax return, in violation of § 7206(1), and Mrs. Kawashima's conviction for aiding and assisting in the preparation of a false tax return, in violation of § 7206(2), constitute aggravated felonies. Section 1101(a)(43)(M) defines an "aggravated felony" to include "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000." 8 U.S.C. § 1101(a)(43) (M)(i)-(ii).

## A

As a threshold statutory interpretation matter, we must decide whether tax offenses other than those described in § 7206(1) qualify as aggravated felonies under subsection

(M)(i).[3] The Kawashimas argue that subsection (M)(i) is inapplicable in this case, reasoning that subsection (M)(ii)'s specific reference to § 7201 indicates Congress's intent to exclude all federal tax offenses from the definition of aggravated felonies under the more general subsection (M)(i). We are not persuaded.

**[1]** The plain text of subsection (M)(i) sets forth two requirements for an offense to qualify as an aggravated felony. First, the offense must "involve fraud or deceit." Second, the "loss to the victim or victims" must exceed $10,000. *Ferreira v. Ashcroft*, 390 F.3d 1091, 1096 (9th Cir. 2004). In our view, §§ 7206(1) and (2) necessarily "involve fraud or deceit" because the provisions require the government to prove either that the defendant "willfully" subscribed to a statement in a tax return he did not believe to be true, or that the defendant "willfully" aided and assisted in the making of a false or fraudulent return. *See infra*, Part II.C. Moreover, because the government is a qualifying victim, *see, e.g.*, *Balogun v. U.S. Attorney Gen.*, 425 F.3d 1356, 1361 (11th Cir. 2005), a tax loss in excess of $10,000 satisfies the second prong of subsection (M)(i). Thus, according to the plain meaning of the statutory language, convictions for violating §§ 7206(1) and (2) in which the tax loss to the government exceeds $10,000 constitute aggravated felonies under subsection (M)(i). And because such interpretation does not lead to an absurd or unreasonable result, our inquiry must end.[4]

---

[3]The Kawashimas' convictions do not constitute aggravated felonies under subsection (M)(ii) because that provision is limited to tax offenses in violation of § 7201. Mr. Kawashima was convicted under § 7206(1) and Mrs. Kawashima was convicted under § 7206(2). *See United States v. Roselli*, 366 F.3d 58, 62 n.5 (1st Cir. 2004).

[4]*United States v. King*, 244 F.3d 736, 740 (9th Cir. 2001) ("Unless the plain meaning leads to an absurd or unreasonable result, which it does not here, our 'judicial inquiry is at an end.' " (citation omitted)); *see also United States v. Gonzales*, 520 U.S. 1, 8 (1997) ("Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest." (internal citation and quotation marks omitted)).

**[2]** We recognize that a divided panel of the Third Circuit reached a contrary conclusion in *Ki Se Lee v. Ashcroft*, 368 F.3d 218 (3d Cir. 2004), a case cited by neither party. There, the court found that the presence of subsection (M)(ii) reflected Congress's intent to specify tax evasion as the only removable tax offense, and thereby exclude tax offenses from the scope of subsection (M)(i). Writing in dissent, however, then-Judge (now Justice) Alito concluded that the plain text of subsection (M)(i) did not preclude the inclusion of tax offenses within its definition of aggravated felonies. *Id.* at 226 (Alito, J., dissenting). We are persuaded by Judge Alito's interpretation of the statute.

The court in *Ki Se Lee* applied two interpretive canons in support of its reading. First, the court applied the canon that prescribes that, whenever possible, a statute should be interpreted to avoid rendering other provisions superfluous. *Id.* at 223. In the court's view, reading subsection (M)(i) to include tax offenses would render subsection (M)(ii) superfluous because any of the tax evasion offenses described by § 7201 would fall within the scope of subsection (M)(i)'s "fraud or deceit" provision. *Id.* at 222-23. Second, the court applied the familiar canon that the "specific governs the general." *Id.* at 223. Noting that subsection (M)(i) is a general provision that covers "fraud and deceit" and subsection (M)(ii) is a narrower provision that only covers federal tax evasion, the court reasoned that this canon also supported its conclusion that tax evasion in violation of § 7201, as described in subsection (M)(ii), is the only removable tax offense. *Id.* at 224.[5]

**[3]** While such canons are valuable tools in interpreting a

---

[5]The Kawashimas also argue that the canon that construes ambiguities in a deportation statute in favor of the alien supports their argument that subsection (M)(ii) precludes the inclusion of tax offenses in subsection (M)(ii). That canon, however, is inapplicable where, as in this case, the statutory language is clear. *See Cardoza-Fonseca v. INS*, 480 U.S. 421, 449 (1987).

statute's text, it is unnecessary to resort to these devices where, as with subsection (M)(i), the statutory text is clear. *See Ki Se Lee*, 368 F.3d at 226 (Alito J., dissenting); *see also Clark v. Martinez*, 543 U.S. 371, 385 (2005). Subsection (M)(i) plainly categorizes an offense as an aggravated felony as long as it includes two elements, "fraud and deceit" and loss to the victim in excess of $10,000. No further limitations are imposed.

Further, the interpretation adopted by the court in *Ki Se Lee* imputes an intent to Congress that is not supported by the statute's text. As the dissent in *Ki Se Lee* noted, "[i]f Congress had not wanted subsection (M)(i) to apply to 'tax offenses,' Congress surely would have included some language in that provision to signal that intention. As adopted, however, subsection (M)(i) contains no such hint." *Id.*

Finally, there are many reasons why Congress might have included subsection (M)(ii) even though many, if not all, of the tax offenses it describes would fall within the scope of subsection (M)(i). As the dissent in *Ki Se Lee* emphasized, "[s]ubsection (M)(ii) may have been enacted simply to make certain—even at the risk of redundancy—that tax evasion qualifies as an aggravated felony." *Id.* Although we recognize that the avoidance of surplusage in statutory text is an important goal, Congress harbors other important goals as well when adopting legislation. Judge Alito's dissent suggested two examples. First, even if Congress could not think of a tax evasion offense under § 7201 that would not involve "fraud or deceit" and therefore be adequately covered by subsection (M)(i), Congress has often realized its inability to anticipate every possible type of case, and may have added subsection (M)(ii) just to ensure that no tax evasion case fell outside subsection (M)'s definition of an aggravated felony. *Id.* at 226. Alternatively, Congress might have wanted to ensure that no court would hold that tax evasion falls outside the definition of an aggravated felony simply because "fraud" and "deceit" are not specific elements of that offense. *Id.* at 226-27.

**[4]** We therefore respectfully decline to adopt the Third Circuit's interpretation of subsection (M)(i). Accordingly, we conclude that tax offenses not covered by subsection (M)(ii)'s specific reference to § 7201 qualify as aggravated felonies under subsection (M)(i) where the loss exceeds $10,000.

B

Our next task is to determine whether the Kawashimas' convictions under §§ 7206(1) and (2) meet subsection (M)(i)'s definition. To do so, we rely on the familiar two-step test set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See, e.g.*, *Ferreira*, 390 F.3d at 1095. First, we "look to the statute under which the person was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43). . . . Under this categorical approach, an offense qualifies as an aggravated felony if and only if the full range of conduct covered by the [statute of conviction] falls within the meaning of that term." *Id.* (citations and internal quotation marks omitted).

If the statute of conviction is broader than the definition of the relevant removal offense, we must then proceed to the "modified" categorical approach. *Id.* Under the modified categorical approach, we conduct a "limited examination of documents in the 'record of conviction.' " *Id.* (quoting *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir.2002)). Upon this examination, we ask "whether there is sufficient evidence to conclude that the alien was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *Id.*

The record of conviction that forms the boundaries of our investigation is limited to a "narrow, specified set of documents that includes 'the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment.' " *Id.* We may not "look beyond the record of conviction itself to the particular facts

underlying the conviction." *Id.* If the record of conviction fails to establish that the petitioner's offense qualifies as an aggravated felony, the government has failed to meet its burden of proving that the defendant committed an aggravated felony. *Id.*

**[5]** The conduct proscribed by §§ 7206(1) and (2), the statutes under which the Kawashimas were convicted, is broader than the conduct that meets the definition of an aggravated felony under subsection (M)(i). Simply stated, the statutes under which the Kawashimas were convicted do not require proof of monetary loss in excess of $10,000. *See Li v. Ashcroft*, 389 F.3d 892, 896 (9th Cir. 2004). Accordingly, we must turn to the modified categorical approach in this case.

1

**[6]** The information, plea agreement, and admission in Mr. Kawashima's case establish that he was convicted of violating 7206(1). That section has four elements: "(1) the defendant made and subscribed a return, statement, or other document that was incorrect as to a material matter; (2) the return, statement, or other document subscribed by the defendant contained a written declaration that it was made under the penalties of perjury; (3) the defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) *the defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.*" *United States v. Boulware*, 384 F.3d 794, 810 (9th Cir. 2004) (emphasis added). Thus, Mr. Kawashima's conviction under § 7206(1) necessarily involved "fraud or deceit." *See Ki Se Lee*, 368 F.3d at 226 (Alito, J., dissenting) (" 'Fraud' or 'deceit' is a necessary element of 26 U.S.C. § 7206(1) . . . .").

Moreover, the record of conviction establishes that the offense for which Mr. Kawashima was convicted resulted in a loss to the government of more than $10,000. Specifically,

Mr. Kawashima stipulated in the plea agreement that the "total actual tax loss" was $245,126.

[7] Based on the evidence available to us in the record of conviction, we conclude that Mr. Kawashima's conviction under § 7206(1) constitutes an aggravated felony as described in subsection (M)(i) because it involved "fraud or deceit" and because his offense resulted in a loss to the government in excess of $10,000. Accordingly, we deny Mr. Kawashima's petition for review of the BIA's affirmance of the IJ's order.

2

[8] The record of conviction in Mrs. Kawashima's case establishes that she was convicted of aiding and assisting in the preparation of a false tax return, in violation of § 7206(2). That section requires the government to prove the following: "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that *the return was fraudulent or false as to a material matter*; and (3) *the act of the defendant was willful.*" *United States v. Salerno,* 902 F.2d 1429, 1432 (9th Cir. 1990) (emphasis added). Moreover, as we observed in *Salerno*, "[t]he Supreme Court has repeatedly held that in order to make out a 'willful violation' of section 7206(2) the government must prove defendants acted with specific intent to defraud the government in the enforcement of its tax laws." *Id*. Thus, a conviction under § 7206(2) necessarily "involves fraud or deceit" and therefore satisfies the first element of an aggravated felony as described in subsection (M)(i).

As to the second element, however, the modified categorical approach limits the scope of our review to the record of conviction to determine whether Mrs. Kawashima's offense resulted in a loss to the government in excess of $10,000. Mrs. Kawashima expressly denied that such loss occurred. The government produced an information charging Mrs. Kawashima with violating § 7206(2) and alleging that she

willfully aided and assisted in her husband's filing of a false corporate tax return. The information alleges that the tax return "did not include substantial income, namely, $76,645 that the corporation received in 1991." Failure to report income, however, does not represent the "tax loss" to the government. Thus, the information alone fails to demonstrate that Mrs. Kawashima's offense resulted in a tax loss to the government in excess of $10,000.

**[9]** The government failed to produce any other documents eligible for our consideration under the modified categorical approach. The record of conviction lacks any plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding, or the judgment. Nor may this court rely on the loss stipulated in Mr. Kawashima's plea agreement for the purpose of establishing the amount of loss caused by his wife's offense. Accordingly, there is no evidence available to us that establishes that Mrs. Kawashima's conviction resulted in a tax loss to the government in excess of $10,000.

The government argues that "it cannot reasonably be claimed" that the tax loss did not exceed $10,000. In support of this argument, the government directs our attention to the Sentencing Guidelines, specifically U.S.S.G. § 2T1.1(c)(1)(A). That section provides as follows: "If the offense involving filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income (34% if the taxpayer is a corporation) plus 100% of any false credits claimed against tax, unless a more accurate determination of the tax loss can be made." *Id.* The government's reliance on § 2T1.1(c)(1)(A) is misplaced, however, because the Sentencing Guidelines are irrelevant to the modified categorical approach *Taylor* and its progeny require us to follow in this case. When determining whether an offense qualifies as an aggravated felony, our investigation is strictly limited to only the charging document, a signed plea agreement, jury instructions, guilty pleas, tran-

scripts of a plea proceeding and the judgment. Nothing more may be considered.

**[10]** On the record now before us, under the modified categorical approach, we cannot conclude that Mrs. Kawashima committed an offense involving "fraud or deceit" that resulted in loss to the government in excess of $10,000, as required by subsection (M)(i).[6] The record of conviction in Mrs. Kawashima's case consisted only of the information and her admission of the conviction. Neither document establishes that the tax loss to the government resulting from her offense exceeded $10,000. The government failed to carry its burden.

**[11]** The government contends that we must remand to afford it another opportunity to compile a record of conviction. Under similar circumstances in *Notash v. Gonzales*, 427 F.3d 693 (9th Cir. 2005), the government failed to introduce into the record documents that the court could have examined under the modified categorical approach. *Id.* at 699. Without remanding the case to allow the government to introduce new evidence or allow the agency to apply the modified categorical approach, we concluded that the government failed to meet its burden of proving that the petitioner was convicted of the predicate offense and therefore granted the petition for review. *Id.* Here, as in *Notash*, our precedents clearly establish the limited number of documents a court may consider under the modified categorical approach. In such a case, the government should not have a second bite at the apple.[7]

---

[6]The government argues that Mrs. Kawashima waived her argument that her offense did not result in a loss to the government in excess of $10,000 because she did not dispute the matter in her briefing to this court. We disagree. The Kawashimas adequately raised the argument in their opening briefing, arguing that the tax offenses did not constitute aggravated felonies because they did not involve "fraud or deceit *in which the loss to the victim exceeds $10,000.*" (emphasis added).

[7]The government's reliance on *INS v. Ventura*, 537 U.S. 12, 16-18 (2002), in support of remand is misplaced. The Court in *Ventura* consid-

Accordingly, we grant Mrs. Kawashima's petition for review of the BIA's affirmance of the IJ's order and we vacate her order of removal.

### III

Our final task is to determine whether the BIA erred in denying the Kawashimas' motion to reopen.[8]

### A

**[12]** Mr. Kawashima argues that his motion to the BIA was a special motion pursuant to 8 C.F.R. § 1003.44 to seek section 212(c) relief. Section 1003.44 "applies to certain aliens who formerly were lawful permanent residents, who are sub-

_____

ered an issue on which the BIA had not yet had an opportunity to rule. In this case, however, the issue of whether Mrs. Kawashima's conviction was an aggravated felony was already decided by the BIA. *See also Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1133-34 (9th Cir. 2006) ("*Ventura* undeniably involved an issue the BIA had not considered . . . [B]y contrast, whether the offense underlying [the defendant's] 2003 conviction was a crime of domestic violence under federal law is an issue the BIA has already addressed . . . .").

[8]The government contends that we lack jurisdiction over the Kawashimas' petition for review of the BIA's decision, citing 8 U.S.C. § 1252(a)(2)(c). That provision strips a court of jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed" certain offenses, including an "aggravated offense." *See* 8 U.S.C. § 1252(a)(2)(c); *see also id.* § 1227(a)(2)(A)(iii). However, the government's argument ignores § 1252(a)(2)(D), which provides that, despite subsection (c), a court remains vested with the jurisdiction to review "constitutional claims or questions of law raised upon a petition for review."

As a threshold matter, the Kawashimas argue that the BIA applied the incorrect regulation when it determined that their motion was untimely. Whether the BIA applied the appropriate regulation is decidedly a "question of law" over which we retain jurisdiction. *See Florez-de Solis v. INS*, 796 F.2d 330, 333 (9th Cir. 1986) ("[Petitioner's] contention that the BIA applied an incorrect standard is a question of law reviewed *de novo*.").

ject to an administratively final order of deportation or removal, and who are eligible to apply for relief under former section 212(c) of the Act and 8 CFR 1212.3 with respect to convictions obtained by plea agreements reached prior to a verdict at trial prior to April 1, 1997." 8 C.F.R. § 1003.44(a). To obtain relief under this provision, an alien "must file a special motion to seek section 212(c) relief on or before April 26, 2005." *Id.* § 1003.44(h). Furthermore, the provision imposes strict procedural requirements. In particular, the alien's motion "*must* contain the notation '*special motion to seek section 212(c) relief.*' " *Id.* § 1003.44(f) (emphasis added).

**[13]** Mr. Kawashima claims that the required notation appears on page nine of the Kawashimas' motion. However, this page fails to contain any of the necessary text. Instead, it simply quotes 8 C.F.R. § 1003.44(b), which states, among other things: "Generally, a special motion under this section to seek section 212(c) relief must establish that the alien . . . ." This language fails in all respects to comply with the strict requirements imposed by 8 C.F.R. § 1003.44(h) and was inadequate to place the BIA and the district counsel on notice that Mr. Kawashima intended to make a special motion to seek section 212(c) relief.

Standing alone, Mr. Kawashima's failure to include the precise language required by § 1003.44(h) is a sufficient basis on which to reject his attempt to construe the Kawashimas' motion as one seeking section 212(c) relief. Even if it were not, however, the cover page and first page of the motion state no less than four times: "Motion to Reopen Proceedings and Stay Deportation Under *Magana-Pizano v. INS*."**⁹** A motion

---

**⁹**The motion contained no citation to *Magana-Pizano*, but Mr. Kawashima might have been referring to our opinion in *Magana-Pizano v. INS*, 200 F.3d 603 (9th Cir. 1999). Although that opinion did discuss § 212(c) and the Antiterrorism and Effective Death Penalty Act in that opinion, it did not concern a motion to reopen. In any event, the motion's reference to *Magana-Pizano* does not comply with the requirements imposed by 8 C.F.R. § 1003.44(f).

styled in this manner cannot reasonably be spared by text hidden in a lengthy quote found on page nine of the brief.

**[14]** Section 1003.44 does not require mere notice, it imposes strict procedural requirements to qualify for relief, including the notation "special motion to seek section 212(c) relief." Accordingly, we conclude that the BIA did not err in applying the 90-day filing deadlines for general motions to reopen pursuant to 8 C.F.R. § 1003.2(c)(2) and in denying Mr. Kawashima's motion to reopen as untimely because it was filed almost eight months late.[10] Therefore, we deny Mr. Kawashima's petition for review of the BIA's denial of the motion to reopen.

B

Since we have granted Mrs. Kawashima's petition for review, we dismiss her petition for review of the BIA's denial of her motion to reopen as moot. *See Goldeshtein v. INS*, 8 F.3d 645, 646 n.1, 650 (9th Cir. 1993) (dismissing as moot petitioner's motion to reopen after concluding that the petitioner is not removable because he was not convicted of a predicate offense involving moral turpitude).

IV

For the foregoing reasons, the petition for review of the BIA's affirmance of the IJ's removal order is **DENIED** with respect to Akio Kawashima (04-74313) and **GRANTED** with respect to Fusako Kawashima (05-74408). The petition to

---

[10]Pursuant to 8 C.F.R. § 1003.2(c)(2), a general motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later." The BIA's final administrative decision upholding the IJ's order of removal was rendered on August 16, 2004. The Kawashimas filed their motion to reopen either on April 26, 2005 (or April 27, 2005), more than eight months after the BIA's final decision.

review the BIA's denial of the motion to reopen is **DENIED** with respect to Akio Kawashima (04-74313) and **DISMISSED as MOOT** with respect to Fusako Kawashima (05-74408).