**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AKIO KAWASHIMA; FUSAKO
KAWASHIMA,
                                    *Petitioners,*

            v.

MICHAEL B. MUKASEY, Attorney
General,
                                    *Respondent.*

No. 04-74313

Agency Nos.
A38-554-590
A38-554-591

AKIO KAWASHIMA; FUSAKO
KAWASHIMA, aka Fusako Nakajima,
                                    *Petitioners,*

            v.

MICHAEL B. MUKASEY, Attorney
General,
                                    *Respondent.*

No. 05-74408

Agency Nos.
A38-554-590
A38-554-591

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 8, 2007—Pasadena, California

Filed July 1, 2008

Before: Diarmuid F. O'Scannlain, Edward Leavy, and
Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge O'Scannlain

7903

## COUNSEL

Judith L. Wood, Law Offices of Judith L. Wood, Los Angeles, California, argued the cause for the petitioner, and filed briefs; Todd Beacraft, Law Offices of Judith L. Wood, Los Angeles, California, was on the briefs.

Nancy Freedman, Office of Immigration Litigation, Washington, DC, argued the cause for the respondents; Peter D. Keisler, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Assistant Director, and James A. Hunolt, Senior Litigation Counsel, Office of Immigration Litigation, Washington, DC, were on the brief.

## ORDER

Petitioner's "Amended Petition for Rehearing With a Suggestion for an En Banc Hearing" is GRANTED. The opinion filed on September 18, 2007, and appearing at 503 F.3d 997 (9th Cir. 2007) is withdrawn. The superseding opinion will be filed concurrently with this order.

Petitioner's "Motion For Leave to File a Response to the Reply of the United States to the Appellant's Amended Petition for Rehearing" is DENIED as moot.

The parties may file new petitions for rehearing or rehearing en banc as provided by Federal Rule of Appellate Procedure 40.

---

## OPINION

PER CURIAM:

We are called upon to decide whether petitioners' convictions for subscribing to a false statement on a tax return and for aiding and assisting in the preparation of a false tax return qualify as "aggravated felonies" that subject them to removal under the relevant immigration laws. In our previous opinion in this case, *Kawashima v. Gonzales*, 503 F.3d 997 (9th Cir. 2007), *withdrawn* __ F.3d __ (9th Cir. 2008), we conducted a limited examination of the record of petitioners' convictions to answer this question. One day after our panel opinion was filed, our en banc court decided *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), which causes us to reconsider our analysis.

I

Akio Kawashima and Fusako Kawashima[1] are natives and

---

[1]We refer to Akio as "Mr. Kawashima" and Fusako as "Mrs. Kawashima." We refer to Akio and Fusako collectively as the "Kawashimas."

citizens of Japan. The Kawashimas were admitted to the United States as lawful permanent residents on June 21, 1984.

In 1997, Mr. Kawashima pled guilty to subscribing to a false statement on a tax return, in violation of 26 U.S.C. § 7206(1). In his plea agreement, he stipulated that the "total actual tax loss" for the purpose of determining his offense level under the Sentencing Guidelines was $245,126. Mr. Kawashima further conceded that he could be ordered to pay the same amount in restitution. On the same date, Mrs. Kawashima pled guilty to aiding and assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2). Her plea agreement was not included in the record before us.

On August 3, 2001, the Immigration and Naturalization Service[2] issued separate Notices to Appear to the Kawashimas alleging that the couple was removable because their prior convictions constituted aggravated felonies under 8 U.S.C. § 1101(a)(43)(M)(i) ("Subsection M(i)") (defining as an aggravated felony any offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000"). *See id.* § 1227(a)(2)(A)(iii) (stating that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable").[3]

After holding a removal hearing, an Immigration Judge ("IJ") concluded that the Kawashimas' convictions were aggravated felonies under Subsection M(i). Accordingly, the IJ found the Kawashimas removable, denied their motion to

---

[2]On March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency under the U.S. Department of Justice and its functions were transferred to the Bureau of Immigration and Customs Enforcement within the newly formed Department of Homeland Security. We refer to the INS and its successor as the "Service."

[3]The Notice to Appear also alleged that the Kawashimas were removable for having been convicted of aggravated felonies under § 1101(a)(43)(M)(ii), but that allegation is not before us here.

terminate the proceedings, and ordered that they be removed to Japan.

The Kawashimas appealed the decision, and the Board of Immigration Appeals ("BIA") remanded because the transcript containing the testimony of the hearing and the IJ's oral decision was defective. After further proceedings, the IJ again denied the Kawashimas' motion to terminate proceedings and ordered them removed to Japan. The BIA affirmed and adopted the IJ's decision.

The Kawashimas subsequently filed a motion to reopen seeking waiver of inadmissibility under the Immigration and Nationality Act ("INA") § 212(c), 8 U.S.C. § 1182(c) (repealed 1996). The BIA denied the motion as untimely.

The Kawashimas timely filed separate petitions for review of the BIA's affirmance of the IJ's removal order and the BIA's denial of their motion to reopen. We consolidated the petitions for review pursuant to 8 U.S.C. § 1252(b)(6) and consider each in turn.

## II

We must first decide whether the Kawashimas' convictions qualify as aggravated felonies under Subsection M(i). To do so, we rely on the familiar two-step test set forth in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005). *See Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 818 (2007) (acknowledging that the courts of appeals have "uniformly" relied on *Taylor* for this inquiry). First, we "look to the statute under which the [petitioner] was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43). . . . Under this categorical approach, an offense qualifies as an aggravated felony if and only if the full range of conduct covered by the [statute of conviction] falls within the meaning of that

term." *Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir. 2004) (internal quotation marks and citation omitted).

If the statute of conviction proscribes a broader range of conduct than the relevant definition of an aggravated felony, we move to the modified categorical analysis, and conduct a "limited examination of documents in the record of conviction,"[4] asking whether such documents provide "sufficient evidence to conclude that the alien was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *Id.* (internal quotation marks and citation omitted).

**[1]** In this case, Subsection M(i) defines as an aggravated felony any offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). We have held previously that "[t]his particular statutory definition of an aggravated felony . . . has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the victim or victims of more than $10,000." *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002). Accordingly, the Kawashimas are removable only if they were convicted of both elements. *Id.* at 1189-91; *Li v. Ashcroft*, 389 F.3d 892, 897 (9th Cir. 2004).

A

**[2]** We begin with the categorical approach. Mr. Kawashima pled guilty to subscribing to a false statement on a tax return, in violation of 26 U.S.C. § 7206(1).[5] Mrs.

---

[4]Our examination is limited to a "narrow, specified set of documents" that includes " 'the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings.' " *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004) (quoting *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001)). We may not "look beyond the record of conviction itself to the particular facts underlying the conviction." *Id.*

[5]Specifically, the statute provides fines and imprisonment for any person who

Kawashima pled guilty to aiding and assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2).[6] Neither statute requires proof of monetary loss in excess of $10,000. *See Li*, 389 F.3d at 896. Thus, both are "too broad to be a categorical match" for Subsection M(i) and the Kawashimas' prior convictions do not qualify as aggravated felonies under the categorical approach. *See Chang*, 307 F.3d at 1189.

## B

We have reached this point in the *Taylor* analysis on four occasions in the past when comparing statutes of conviction lacking a monetary loss element to Subsection M(i) and each time we have turned to the record of conviction to determine whether the jury actually found, or the petitioner (as defendant) necessarily admitted a loss to the victim in excess of $10,000. *See Kharana v. Gonzales*, 487 F.3d 1280, 1284 (9th Cir. 2007); *Ferreira*, 390 F.3d at 1098; *Li*, 389 F.3d at 897; *Chang*, 307 F.3d at 1189-90. Sitting en banc in *Navarro-Lopez*, however, we curtailed our reliance on the record of conviction in circumstances such as these.

---

[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter.

26 U.S.C. § 7206(1).

[6]That statute provides for the fining and imprisonment of any person who

[w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document.

26 U.S.C. § 7206(2).

**[3]** In *Navarro-Lopez*, we held that a petitioner's conviction for accessory after the fact under California state law was not categorically a "crime involving moral turpitude" as defined in the INA because the California statute under which petitioner was convicted proscribed a "broader" range of conduct than the generic definition that the INA provides. 503 F.3d at 1071 (interpreting California Penal Code section 32). Specifically, we explained that a "crucial element" of a crime involving moral turpitude is that the offense "involve some level of depravity or baseness," and that the California statute did not include "grave acts of baseness or depravity." *Id.* Then, turning to *Taylor*'s second step, we held that

> The modified categorical approach . . . only applies when the particular elements in the crime of conviction are broader than the generic crime. When the crime of conviction is missing an element of the generic crime altogether, we can never find that "a jury was actually required to find all the elements of" the generic crime. *See Li v. Ashcroft*, 389 F.3d 892, 899-901 (9th Cir. 2004) (Kozinski, J., concurring) (providing examples).

*Id.* at 1073. Because we concluded that the California statute "lack[ed] an element of the generic crime—i.e., the moral turpitude, the requisite depravity," we held that *Taylor* prohibited us from examining the record of petitioner's conviction to determine whether he was, in fact, convicted of such an act. *Id.* As we explained,

> The crime of conviction can never be narrowed to conform to the generic crime because the jury is not required—as *Taylor* mandates—to find all the elements of the generic crime. Even if [petitioner] had admitted to depraved acts, those admissions could not be used to modify the crime because they were not necessary for a conviction.

*Id.* (footnote and citation omitted).

**[4]** The statutes under which the Kawashimas were convicted, 8 U.S.C. §§ 7206(1) and (2), did not require the government to prove the amount of loss their actions caused. Thus, if *Navarro-Lopez* applies to this case, we may not turn to the record of the Kawashimas' convictions to determine whether they actually pled guilty to causing a loss of more than $10,000 as Subsection M(i) requires.

**[5]** Nevertheless, two factors give us pause before concluding that *Navarro-Lopez* compels such a result here. First, we have previously applied the modified categorical approach in cases where the statute of conviction prohibits a broader range of conduct than the generic offense, regardless of whether the former lacks a particular element of the latter. *See, e.g., United States v. Parker*, 5 F.3d 1322 (9th Cir. 1993) (applying the modified categorical approach to determine whether a jury found the defendant guilty of generic burglary even though the statute under which the defendant was convicted did not require unlawful entry, a necessary element of the generic definition); *United States v. Alvarez*, 972 F.2d 1000 (9th Cir. 1992) (per curiam) (same). In *Navarro-Lopez*, we did not explicitly overrule these precedents, or the four decisions in which we have applied the modified categorical approach in examining the monetary loss requirement under Subsection M(i). *See Kharana*, 487 F.3d at 1284; *Ferreira*, 390 F.3d at 1098; *Li*, 389 F.3d at 897; *Chang*, 307 F.3d at 1189-90. Nevertheless, *Navarro-Lopez*'s statement that the modified categorical approach never applies when "the crime of conviction is missing an element of the generic crime altogether," 503 F.3d at 1073, is plain and clear. And, because such statement is irreconcilable with our precedents that have held otherwise, we must conclude that they have been impliedly overruled.

In addition, however, we are given pause by the distinction between the handful of aggravated felonies listed in the INA that require a specific monetary loss and the other generic

offenses we construe under *Taylor*. When we apply *Taylor* in the ordinary case, we consider whether a conviction qualifies as a generic offense with a unitary definition, such as a "crime involving moral turpitude" in removal cases or "burglary" in sentencing enhancement cases, to name just two. The *Navarro-Lopez* rule, which requires that the statute of conviction must contain every element of the generic offense before we resort to the modified categorical approach, plainly applies in this setting. *See Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 749 (9th Cir. 2008) (applying *Navarro-Lopez* in a crime involving moral turpitude case); *United States v. Jennings*, 515 F.3d 980, 992-93 (9th Cir. 2008) (applying *Navarro-Lopez* rule in an Armed Career Criminal Act case).

Subsection M(i), however, requires us to undertake a somewhat different inquiry. That statute defines as an aggravated felony any offense that "involves fraud or deceit *in which* loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(i) (emphasis added). Two of our sister circuits have interpreted this "in which" language as a limiting provision or qualifier on the unitary generic offense—crime involving fraud or deceit—rather than an "element" of the offense itself. *See Singh v. Ashcroft*, 383 F.3d 144, 161 (3d Cir. 2004); *Arguelles-Olivares v. Mukasey*, 526 F.3d 171, 177-79 (5th Cir. 2008).

Under this construction, we suppose, the absence of a monetary loss element from the Kawashimas' statutes of conviction would not preclude us from examining the record to determine the amount of loss their prior offenses caused. Such an approach would account for the fact that most fraud statutes do not contain a monetary loss element.[7] In addition, it

---

[7]*See, e.g.,* 18 U.S.C. § 1344 (bank fraud); *id.* § 152 (concealment of assets, false oaths and claims in bankruptcy); *id.* § 286 (conspiracy to defraud the government with respect to claims); *id.* § 472 (uttering counterfeit obligations or securities); *id.* § 1010 (fraud and false statements in HUD and FHA transactions); *id.* § 1341 (mail fraud).

would avoid an anomalous consequence that results from applying *Navarro-Lopez* here. Consider, for example, two of Subsection M(i)'s companion statutes. First, 8 U.S.C. § 1101(a)(43)(M)(ii) defines as an aggravated felony any offense "described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000." The only offense that can qualify as an aggravated felony under this particular provision of the INA is a violation of § 7201, yet that section contains no specific monetary loss element. Thus, if we decline to examine the record of conviction to determine the loss that occurred, the list of aggravated felonies enumerated in § 1101(a)(43)(M)(ii) is a null set. The very same is true of 8 U.S.C. § 1101(a)(43)(D), which defines as an aggravated felony, among other things, "an[y] offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) . . . if the amount of the funds exceeded $10,000." Section 1956 contains no monetary loss element either and, thus, under *Navarro-Lopez* a violation of that statute can never qualify as a removable offense under this particular provision of the INA, even though Congress has explicitly defined it as such.[8]

**[6]** Yet while these considerations might warrant examining the record of conviction to determine whether the Kawashimas' offenses resulted in the monetary loss required by Subsection M(i), we must conclude that *Navarro-Lopez* forecloses that option. We have consistently interpreted Subsection M(i)'s monetary loss requirement as an "element" of the generic offense, which the record of petitioner's conviction must demonstrate that the jury actually found or the peti-

---

[8]The provisions stripped of any practical effect by *Navarro-Lopez* are not limited to those with qualifying language relating to loss suffered by the victim. For example, 8 U.S.C. § 1101(a)(43)(K)(ii) defines as an aggravated felony any offense " described in section 2421, 2422, or 2423 of Title 18 (relating to transportation for the purpose of prostitution) *if* committed for commercial advantage." *Id.* (emphasis added). Yet only one of the three enumerated statutes lists the phrase "commercial advantage" as an element. *See* 18 U.S.C. § 2423(d).

tioner (as defendant) necessarily admitted. *See Kharana*, 487 F.3d at 1283-84; *Li*, 389 F.3d at 897; *Chang*, 307 F.3d at 1189-91. And *Navarro-Lopez*'s prohibition on examining the record of conviction plainly applies to all prior offenses that lack an "element" of the generic offense. 503 F.3d at 1073.

Moreover, we find confirmation for our view in then-Judge Kozinski's concurrence in *Li*, the lone authority cited to in *Navarro-Lopez* as support for this rule. *Navarro-Lopez*, 503 F.3d at 1073 (citing *Li*, 389 F.3d at 899-901 (Kozinski, J., concurring)). The question presented in *Li* was identical to the one presented here—whether a petitioner's convictions under fraud-related statutes that lacked monetary loss elements could qualify as aggravated felonies under Subsection M(i). 389 F.3d at 893-94. The majority concluded that such a result was possible if the record of petitioner's conviction demonstrated that the jury "actually found" him to have caused a loss greater than $10,000. *Id.* at 897. Judge Kozinski, on the other hand, wrote separately to state that he would not have examined the record at all because Subsection M(i)'s amount of loss requirement "wasn't an element" of the statutes under which the petitioner had been convicted. *Id.* at 900. Because the en banc court in *Navarro-Lopez* quoted Judge Kozinski's concurrence directly, we cannot reasonably conclude that it did not intend for its rule to control our modified categorical analysis of aggravated felonies defined in Subsection M(i).

**[7]** Thus, because the statutes to which the Kawashimas pled guilty to violating do not require proof of any particular monetary loss, we do not examine the record of their convictions to determine whether they necessarily pled guilty to causing a loss in excess of $10,000. Our conclusion that the government failed to show that the Kawashimas' convictions are aggravated felonies under the categorical approach means that the Kawashimas are not removable and, accordingly, their petitions for review of the BIA's affirmance of the removal order must be granted.

III

Our final task is to determine whether the BIA erred in denying the Kawashimas' motion to reopen. As we have granted the Kawashimas' petition for review of the removal order, we must dismiss their petition for review of the BIA's denial of their motion to reopen as moot. *See Goldeshtein v. INS*, 8 F.3d 645, 646 n.1, 650 (9th Cir. 1993) (dismissing as moot petitioner's motion to reopen after concluding that the petitioner is not removable because he was not convicted of a predicate offense involving moral turpitude).

IV

For the foregoing reasons, Mr. and Mrs. Kawashima's petition for review of the BIA's affirmance of the IJ's removal order in 04-74313 is **GRANTED** and Mr. and Mrs. Kawashima's petition for review of the BIA's denial of the motion to reopen in 05-74408 is **DISMISSED as MOOT**.

O'SCANNLAIN, Circuit Judge, with whom CALLAHAN, Circuit Judge, joins, specially concurring:

I concur in the court's opinion because it faithfully applies our precedent. I write separately because the anomalous result such precedent requires us to reach ignores the plain meaning of the statute we interpret and disregards common sense.

I

This case puts us to the familiar task of examining the list of removable offenses set forth in the Immigration and Nationality Act ("INA" or the "Act"), 8 U.S.C. § 1101, *et seq.*, to determine whether an alien's prior conviction fits within the scope of one such offense and, as a consequence, subjects him or her to deportation. In this case, the question

presented is whether Mr. and Mrs. Kawashima, who pled guilty to having committed fraud in relation to the filing of their tax returns, have been convicted of a crime "involv[ing] fraud or deceit in which loss to the victim or victim exceeds $10,000," as defined by 8 U.S.C. § 1101(a)(43)(M)(i) ("Subsection M(i)"). Our holding that the Kawashimas' convictions do not qualify as removable offenses is compelled by two of our precedents.

First, when this court considers whether a petitioner's prior conviction qualifies as a removable offense under the INA, we apply the two-step test designed by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), for recidivist sentencing enhancement statutes structured in the same way. *See, e.g., Ye v. INS*, 214 F.3d 1128, 1131-34 (9th Cir. 2000). At the first step, we ask whether the petitioner's prior conviction necessarily involves every element of the removable offense (the "generic offense"). If it does, the fact of the defendant's conviction alone qualifies him or her as removable. *Id.* at 1133. If the statute under which the petitioner was convicted proscribes a broader range of conduct than the generic offense, however, we move to *Taylor*'s second step (which our court calls the "modified categorical approach"), and examine the record of conviction to determine whether the jury in petitioner's criminal trial "was actually required to find' " or the petitioner (as defendant) necessarily admitted " 'all the elements of the generic crime.' "[1] *Li v. Ashcroft*, 389 F.3d 892, 896 (9th Cir. 2004) (quoting *Taylor*, 495 U.S. at 602).

The second precedent that compels our holding is our recent en banc decision in *Navarro-Lopez v. Gonzales*, 503

---

[1] In *Shepard v. United States*, 544 U.S. 13 (2005), the Supreme Court held that *Taylor* applies in equal force when determining whether a defendant's prior conviction qualifies as a generic offense that subjects him or her to a sentencing enhancement regardless of whether the conviction arose from a jury verdict or a guilty plea. *Id.* at 20-21.

F.3d 1063 (9th Cir. 2007) (en banc), where we reformulated our modified categorical approach and held that "[w]hen the [petitioner's] crime of conviction is missing an element of the generic crime altogether," we can never examine the record of conviction to determine whether the former fits within the scope of the latter because the record can never reveal whether the jury was actually required to find, or the petitioner (as defendant) necessarily admitted, any element of the generic offense that is not included in the statute of conviction. *Id.* at 1073. Our holding, of course, was informed by the lone authority we cited for this rule—then-Judge Kozinski's concurrence in *Li*. 389 F.3d at 899-901. There, Chief Judge Kozinski noted that, in sentencing cases, *Taylor* made clear that the jury convicting a defendant of a predicate offense must be " '*actually required*' " to find him or her guilty of every element of the sentencing enhancement statute's generic offense before the sentencing judge can increase the defendant's sentence based on such prior crime. *Id.* at 899 (quoting *Taylor*, 495 U.S. at 602 (emphasis in *Li*)).

Chief Judge Kozinski identified our decisions in *United States v. Alvarez*, 972 F.2d 1000 (9th Cir. 1992) (per curiam), and *United States v. Parker*, 5 F.3d 1322 (9th Cir. 1993), as violating this rule and argued that they should be reversed. *Li*, 389 F.3d at 899-900 (Kozinski, J., concurring). In *Alvarez*, we concluded that a defendant's California conviction for burglary qualified as generic burglary as defined in a federal sentencing enhancement statute, even though generic burglary requires "unlawful entry," an element the California statute lacked. 972 F.2d at 1005. We determined that such result was justified because the charging papers alleged that the defendant committed an unlawful entry even though the statute under which he was convicted was silent on the point. *Id.* We applied the same reasoning in *Parker*, although we determined that the record was insufficient. 5 F.3d at 1327. In *Li*, Chief Judge Kozinski argued that we ignored *Taylor* in both cases because "even if the jury had found that [the defendant] entered a building unlawfully, finding a fact isn't the same as

being required to find it—and *Taylor* calls for the latter." *Li*, 389 F.3d at 900 (Kozinski, J., concurring) (internal citations omitted).

Our court adopted this reasoning in *Navarro-Lopez*, explicitly citing Chief Judge Kozinski's *Li* concurrence, and such reasoning certainly appears consistent with *Taylor*'s core principles. Yet, it compels a most curious result here. In the case at hand, the Kawashimas pled guilty to violating a federal statute that prohibits fraud but does not require a particular monetary loss. Maj. Op. at 7908. Under *Navarro-Lopez*, we cannot consult the record of their convictions to determine whether their crimes caused a loss exceeding $10,000, as Subsection M(i) requires, because such loss is not an element of the statute they pled guilty to violating. *See* Maj. Op. at 7915. Of course, this means that virtually no crime will subject an alien to removal under Subsection M(i) because there are almost no statutes that punish fraud and also specify that the fraud must cause a loss of $10,000 or more. *See* Maj. Op. at 7914-15 & n.7 (collecting examples). And, as the court explains, *Navarro-Lopez* renders several of the INA's other removability provisions completely unenforceable because no statute contains all the "elements" they require. *See id.* at 7914-15. I doubt seriously that Congress would have bothered to list and to define crimes in the INA that subject their perpetrators to removal if it did not believe that any criminals would actually be removed once convicted of committing them.

II

Before *Navarro-Lopez*, our caselaw avoided the illogical result that decision compels in this particular case. Previously, we considered whether fraud convictions qualified as removable offenses under Subsection M(i) by examining the record of conviction to determine the loss amount even where the statute of conviction lacked such an element. *See Kharana v. Gonzales*, 487 F.3d 1280, 1283-84 (9th Cir. 2007); *Li*, 389

F.3d at 897; *Chang v. INS*, 307 F.3d 1185 (9th Cir. 2002). We interpreted Subsection M(i) as having two "elements": (1) fraud or deceit, and (2) loss to the victims in excess of $10,000. *Chang*, 307 F.3d at 1189. And, to remain consistent with *Taylor*, we insisted that the record of conviction establish that the jury "actually found" or that the petitioner necessarily pled guilty to both. *Li*, 389 F.3d at 896 n.7, 897-98. In other words, we treated Subsection M(i)'s loss requirement as an "element" of the generic offense, but accepted record evidence as sufficient to establish that the petitioner was, in fact, convicted of such element. *See Kharana*, 487 F.3d at 1281 n.2 (statute of conviction did not require monetary loss, but "in entering her plea, petitioner admitted to defrauding her victims of over $77,000"); *Ferreira v. Ashcroft*, 390 F.3d 1091, 1098-99 (9th Cir. 2004) (statute of conviction required only a $1,000 loss, but restitution amount set forth in plea agreement was sufficient to establish that petitioner's crime involved a $10,000 loss).

*Navarro-Lopez* rejected this approach, concluding that even our demand for such overwhelming evidence violated *Taylor*'s requirement that the crime of conviction contain every element of the generic offense. *See* 503 F.3d at 1073. This may very well be the best reading of *Taylor*, but if so, it is curious that none of our sister circuits agree with the rule *Navarro-Lopez* requires us to apply here.[2] Thus, in my view,

---

[2]The Second Circuit toyed with adopting the rule we did in *Navarro-Lopez*, but ultimately presumed, without deciding, that our pre-*Navarro-Lopez* approach controls. *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d 116, 127, 131 (2d Cir. 2007). The Eleventh Circuit also appears to take the route we chose before *Navarro-Lopez*. *See Obasohan v. U.S. Att'y Gen.*, 479 F.3d 785, 789 (11th Cir. 2007); *see also Graham v. Mukasey*, 519 F.3d 546, 550-51 (6th Cir. 2008) (not endorsing a particular approach but examining the record of conviction to determine that a petitioner's prior conviction qualified as an aggravated felony under Subsection M(i) even though the statute of conviction did not require a $10,000 loss). But, as further explained below, the First, Third, Fifth, and Seventh Circuits have not only rejected our *Navarro-Lopez* approach but further conclude that even our pre-*Navarro-Lopez* cases frustrate the plain meaning of the INA.

the flaw in *Navarro-Lopez* lies not in its interpretation of *Tay-lor*, but in its unbending application of that test, designed for criminal sentencing enhancement statutes, in the distinct setting of civil removal.

## III

## A

Our precedents applying the modified categorical approach in immigration cases make two assumptions that I suggest are untenable. The first assumption is that any and all language Congress uses to define a particular generic offense in the INA must be parsed into "elements," each of which the petitioner must, in fact, have been convicted. Four of our sister circuits reject such extreme literalism, and with good reason. The most common generic offenses found in the INA and in recidivist sentencing enhancement statutes are "relatively unitary categorical concepts— like 'forgery' . . . 'burglary' . . . or 'crime of violence.' " *Singh v. Ashcroft*, 383 F.3d 144, 161 (3d Cir. 2004) (emphasis added). It makes sense to insist that a defendant was actually convicted of a burglary or forgery or committing violence before a subsequent tribunal enhances his sentence upon a future conviction or classifies him as a removable alien on the basis of this prior offense. Yet as the Third and Fifth Circuits explain, "a departure from the formal categorical approach seems warranted" in cases where the generic offense "invite[s] inquiry into the facts underlying the conviction at issue." *Id.*; *see Arguelles-Olivares v. Mukasey*, 526 F.3d 171, 176-77 (5th Cir. 2008) (same). Indeed, "[t]he qualifier 'in which the loss to the victim or victims exceeds $10,000" in [Subsection M(i)] is the prototypical example—it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue." *Singh*, 383 F.3d at 161. Simply stated, Subsection M(i) classifies an alien as removable if he or she is convicted of a fraud-related offense "*in which* the loss to the victim or victims exceeds $10,000," it does not require conviction of "a $10,000 fraud." *See Nijha-*

*wan v. Attorney Gen.*, 523 F.3d 387, 393 (3d Cir. 2008) (emphasis added). As the Third Circuit illustrates, just as we would not interpret a generic offense that subjects an alien to removal if he or she is convicted "within the last two years" to require such durational language to be included in the statute of conviction itself, it is unreasonable to read Subsection M(i) as requiring the statute of conviction expressly to provide for a $10,000 loss. *See Singh*, 383 F.3d at 161; *see also Arguelles-Olivares*, 526 F.3d at 177-78 ("The amount of loss is relevant in a criminal prosecution primarily, if not exclusively, to sentencing. When a tribunal subsequently examines, for collateral purposes like those here, the amount of loss resulting from an offense, the reason for applying the modified categorical approach does not fully obtain.").

Accordingly, I believe it is unreasonable to interpret Subsection M(i) to require a "loss to the victim" element in the alien's statute of conviction. Rather, the most natural reading of Subsection M(i)'s $10,000 loss requirement is as a qualifying provision that limits the number of predicate convictions that would otherwise subject an alien to removal. In other words, the statute provides that any alien who commits an offense "involv[ing] fraud or deceit" is removable *if* such offense is one "in which" the loss to the victim exceeded $10,000. 8 U.S.C. § 1101(a)(43)(M)(i). As the Third and Fifth Circuits suggest, the text of this statute plainly directs the agency (and our court upon a petition for review) to examine the circumstances surrounding the alien's conviction; it does not demand that the statute of conviction specify the amount of monetary loss itself.

B

More importantly, acknowledging the linguistic distinction between provisions such as Subsection M(i) and the remainder of the removable offenses enumerated in the INA should not obscure the greater mischief *Navarro-Lopez* creates. As noted in the court's opinion, the courts of appeals have uni-

formly begun with *Taylor*'s categorical approach when comparing predicate crimes to generic offenses in the INA. Maj. Op. at 7909-10 (citing *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 818 (2007)). Yet to accept that *Taylor* informs such task is not to suggest that *Taylor* controls it. In *Navarro-Lopez*, we continued to assume, as we always have, that the test the Supreme Court designed in *Taylor* for the purpose of categorizing prior convictions under recidivist sentencing enhancement statutes must apply, root-and-branch, to the task of categorizing prior convictions under the INA. Our colleagues on the First and Seventh Circuits, however, have recognized that although the legal question is similar, two critical distinctions between sentencing and removal make it imperative to adapt *Taylor* to fit the confines of this separate arena. *See Ali v, Mukasey*, 521 F.3d 737 (7th Cir. 2008); *Conteh v. Gonzales*, 461 F.3d 45 (1st Cir. 2006).

First, the Supreme Court's decision in *Taylor* was informed by constitutional concerns that are entirely absent from the immigration context. When a sentencing judge increases a defendant's sentence based on his or her prior convictions, the defendant's Sixth Amendment rights are impacted directly. Yet when an immigration judge cites an alien's prior conviction as the basis for removal, there is no constitutional right in play. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) (explaining that "various protections that apply in the context of a criminal trial do not apply in a deportation proceeding"); *Conteh*, 461 F.3d at 55. As the Seventh Circuit explains, *Taylor* was designed to "prevent[ ] the sentencing judge in the new case from assuming a role that the Constitution assigns to the jurors in the first case." *Ali*, 521 F.3d at 741. This design served two purposes: saving the sentencing court the burden of a retrial, *see Taylor*, 495 U.S. at 601-02, and preserving the Sixth Amendment's allocation of responsibilities between the judge and jury, *see id.*; *Shepard*, 544 U.S. 24-26. The latter concern has no place in an immigration case because it is not a criminal proceeding and, as such, "the [S]ixth [A]mendment and the doctrine of *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000), do not come into play." *Ali*, 521 F.3d at 741. And the former goal, saving the agency the burden of a retrial, is a question within the agency's discretion rather than our own. *Id.*; *see also Conteh*, 461 F.3d at 45; *Nijhawan*, 523 F.3d at 399 ("[W]e should not raise an aspect of an immigration statute to the level of an element of a criminal offense . . . merely because requiring that it be a part of the conviction eases a court's decision-making process.")

Second, the INA specifies that, in removal proceedings, the government "has the burden of establishing by clear and convincing evidence" that the alien is removable. 8 U.S.C. § 1229a(c)(3)(A).[3] *Navarro-Lopez*, and indeed even our pre-*Navarro-Lopez* cases, require far more. Before *Navarro-Lopez*, we demanded that the record of conviction prove that the jury actually found or that the alien necessarily admitted to every so-called "element" of the generic offense listed in the INA. But in so doing, we raised the burden of proof in removal proceedings beyond the INA's "clear and convincing" standard to the burden *Taylor* imposes in sentencing cases, which is materially indistinguishable from proof beyond a reasonable doubt. *Nijhawan*, 523 F.3d at 398; *Conteh*, 461 F.3d at 56. In *Navarro-Lopez*, our refusal even to examine the record of conviction for such evidence in cases where the statute of conviction is missing any language from the INA's definition of the generic offense is stricter still. The Act provides unequivocal instructions to the contrary. In the absence of any constitutional reason to require otherwise, I believe our disregard for those instructions obstructs Congress's intent and exceeds our judicial role.

---

[3]The statute goes on to provide that "No decision of deportability shall be valid unless it is based on reasonable, substantial, and probative evidence." 8 U.S.C. § 1229a(c)(3)(A). The Act also lists the sources of evidence which may be consulted to establish proof of a conviction. *Id.* § 1229a(c)(3)(B). Those sources are substantially similar to those described as within the bounds of the inquiry in *Taylor* and *Shepard.*

As the Seventh Circuit has explained, after the fact of petitioner's prior conviction has been established, "the appropriate classification of that conviction"—whether it was a crime 'involving moral turpitude' or one 'in which loss . . . exceeds $10,000'—may require additional information." *Ali*, 521 F.3d at 741. That is to say, the need to decide whether a crime is one of "moral turpitude" or one in which the loss to the victim exceeds a particular amount "does not have a parallel in criminal cases." *Id.* at 741-42. After all, a term such as " 'moral turpitude' just isn't relevant to the criminal prosecution; it is not as if 'turpitude' were an element of an offense." *Id.*; *see also Navarro-Lopez*, 503 F.3d at 1085 (Bea, J., dissenting) ("There is no generic federal crime of moral turpitude . . . . One has to have a *crime*, such as burglary, to use the *Taylor* categorical analysis.").

It is true that the INA requires an alien to be "convicted" of the generic offenses before he or she may be considered removable on that basis. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *id.* § 1227(a)(2)(A)(i) (requiring the same for aliens "convicted" of crimes involving moral turpitude). But applying the INA's evidentiary burden as it is written is not inconsistent with this requirement. The INA does not require that the jury in petitioner's case was actually required to find him or her guilty of every word or phrase it uses to describe a generic offense. *See Conteh*, 461 F.3d at 56. Instead, the Act requires clear and convincing evidence (1) that the petitioner was, in fact, convicted, and (2) that the conviction fits the appropriate classification—a crime "involving moral turpitude" or one "in which" the loss exceeds a particular amount, for example. This is a heavy burden and will not easily be met in cases such as this one, where the text of the statute of conviction and the generic offense are not a categorical match. But, there may be clear and convincing evidence that a petitioner's conviction fits within the scope of the relevant generic offense even where the formal elements of the statute of conviction are missing language

from the generic offense. Criminal statutes simply do not contain as "elements" all the language used in the INA to describe removable offenses. Congress understood this when it enacted the INA and did not require that a petitioner literally be convicted of as much for his or her conviction to trigger removal.

If one accepts that *Taylor*'s constitutional concerns do not migrate to the removal context, and if one further accepts that the burden of proof set forth in the INA differs from *Taylor*'s, there is no reason to ignore the record of conviction when determining whether an alien's conviction qualifies as a removable offense. It should make no difference if the question is whether the predicate conviction was one "involving moral turpitude," as it was in *Navarro-Lopez*, or if the question is whether such conviction is one "in which loss . . . exceeds $10,000," as it is here.[4] In my view, *Navarro-Lopez*'s refusal to examine the record of conviction in either setting whenever the statute of conviction is missing these so-called "elements" is simply unsupportable.

*Navarro-Lopez* may have accurately interpreted *Taylor*, but it did so at the expense of fairly applying the INA. By importing *Taylor*'s criminal sentencing test, root-and-branch, to the arena of civil removal in which we find ourselves here, I

---

[4]If one accepts such proposition, a separate question arises as to what sources a court may consider in determining whether clear and convincing evidence that a predicate offense fits within the relevant generic offense in the INA. The First Circuit limits its inquiry to the materials listed in 8 U.S.C. § 1229a(c)(3)(B), which are essentially the same as those described in *Taylor* and *Shepard*. *See Conteh*, 461 F.3d at 55. The Seventh Circuit, on the other hand, interprets the INA to limit the inquiry to the materials listed in § 1229a(c)(3)(B) only for purposes of ascertaining the fact of petitioner's conviction. For the question of whether the conviction fits the appropriate classification (e.g., the amount of the victim's loss, or whether the crime is one of moral turpitude), "additional evidence may be taken by the immigration judge when necessary," *Ali*, 521 F.3d at 742 (citing *In re Babaisakov*, 24 I. & N. Dec. 306 (2007)), even "evidence beyond the charging papers and judgment of conviction," *id.* at 743.

believe *Navarro-Lopez* improperly rewrites the INA's plain instructions and stands as a roadblock needlessly frustrating Congress's intent.

## IV

Our reformulation of the modified categorical approach in *Navarro-Lopez* stands alone, without support from any other courts of appeals to have considered this question. Moreover, our treatment of this issue was, at best, cursory—two paragraphs and a footnote—and, in my view, entirely insufficient to address a question of such great magnitude. Our decision never addressed the dissenting views of our sister circuits, or even acknowledged the precedents it overturned. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) (Kozinski, J.) ("[W]e would consider it bad form to ignore contrary authority by failing even to acknowledge its existence . . . . So long as the [rejected] earlier authority is acknowledged and considered, courts are deemed to have complied with their common law responsibilities.").

In light of such swift treatment of an important and frequently recurring question, and especially in light of the growing weight of authority that rejects our conclusion, I believe it is fair to ask whether the modified categorical analysis we adopted as law of this circuit in *Navarro-Lopez* reasonably interprets the INA. I believe it does not, and I write separately in the hope that an en banc court with the power to address the anomalies that *Navarro-Lopez* compels will ask the same question very soon.