REVISED FEBRUARY 5, 2009

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 22, 2008

Charles R. Fulbruge III
Clerk

No. 05-60914

JOEL ARGUELLES-OLIVARES, also known as, Joel Arguelles,

Petitioner,

v.

MICHAEL B. MUKASEY, UNITED STATES ATTORNEY GENERAL,

Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals
File: A35 810 822 – El Paso

Before GARWOOD, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The petitioner seeks review of a removal order, contending that his prior conviction for filing a false federal tax return did not constitute a removable offense. We deny the petition for review.

I

Joel Arguelles-Olivares pleaded guilty to violating 26 U.S.C. § 7206(1) by knowingly filing a false tax return.[1] The Department of Homeland Security

---

[1] 26 U.S.C. § 7206(1) (2000) (providing that one who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written

thereafter instituted removal proceedings, charging that Arguelles-Olivares was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(M). Subsection (M) defines an aggravated felony as "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the government exceeds $10,000."[2]  The Immigration Judge ordered Arguelles-Olivares removed, and the Board of Immigration Appeals affirmed the removal order.

Arguelles-Olivares contends that his tax offense is not an "aggravated felony" as defined by subsection (M)(i).  He first asserts that subsection (M)(i) does not apply to any federal tax offenses because subsection (M)(ii) specifically identifies tax evasion, and only tax evasion, thereby reflecting congressional intent that no other tax offense qualifies as an aggravated felony.  He additionally argues that, even if (M)(i) includes knowingly filing a false federal tax return, there is no competent evidence that the amount of loss was $10,000 or more.

II

We are not the first court to consider whether a federal tax offense other than tax evasion may constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(M).  A divided panel of the Third Circuit concluded in Lee v.

---

declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter" shall be guilty of a felony).

[2]8 U.S.C. § 1101(a)(43)(M) (2000).

Ashcroft that it may not.[3] The Ninth Circuit reached the opposite conclusion in Kawashima v. Gonzales,[4] expressly rejecting the majority's reasoning in Lee. The arguments supporting each opposing view have been cogently considered by the Third Circuit in the majority and dissenting opinions in Lee and by the Ninth Circuit in Kawashima. We agree with then-Judge (now Justice) Alito's[5] and the Ninth Circuit's construction of subsection (43)(M)(i).

The text of subsection (43)(M)(i) is straightforward and unambiguous. "The term 'aggravated felony' means . . . an offense that – (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000. . . ."[6] "Willfully" and knowingly signing and filing a false federal tax return unquestionably "involves fraud or deceit," and courts have concluded that the federal government is a "victim" within the meaning of (43)(M)(i).[7] The difficulty in construing (43)(M)(i) is the immediately succeeding subsection: "or (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000."[8] The Third Circuit concluded that this more specific reference to tax evasion and the juxtaposition of the two

---

[3]368 F.3d 218, 220 (3d Cir. 2004).

[4]503 F.3d 997, 1000-01 (9th Cir. 2007).

[5]See Lee, 368 F.3d at 225 (ALITO, J., dissenting).

[6]8 U.S.C. § 1101(a)(43)(M)(i).

[7]See Kawashima, 503 F.3d at 1000; Balogun v. U.S. Attorney General, 425 F.3d 1356, 1361 (11th Cir. 2005); see also United States v. Fleming, 128 F.3d 285, 288 (6th Cir. 1997) ("In tax fraud cases, we consider the United States Treasury the victim.") (citing United States v. Wright, 12 F.3d 70, 74 (6th Cir. 1993)).

[8]8 U.S.C. § 1101(a)(43)(M)(ii).

subsections rendered subsection 43(M)(i) less than "plain and unambiguous."[9] That court "turn[ed] to the traditional tools of statutory construction," concluding that subsection (M)(ii) would be "mere surplusage" if subsection (M)(i) included tax offenses because "the government has not identified, and we are unable to envision" "a case where a conviction for tax evasion would not involve fraud or deceit," and that "the principle that the specific governs the general also favors the interpretation that subsection (M)(ii) identifies the only removable tax offense, tax evasion, while subsection (M)(i) does not apply to tax offenses."[10] The Third Circuit also reasoned that "for Congress to select tax evasion as the [only] 'aggravated' tax felony, justifying removal of an alien who committed it, while sparing lesser tax felons, is thoroughly consistent with the history and structure of criminal tax offenses."[11] In support of this conclusion, Lee cites the Supreme Court's decision in Spies v. United States,[12] characterizing tax evasion as the "'capstone' of tax law violations," the "'climax of this variety of sanctions'" and "'the serious and inclusive felony.'"[13] The Third Circuit decided that "Congress' intent is clear," and "[t]o the extent that any ambiguity lingers, we note that there is a 'longstanding principle of construing any lingering

---

[9]Lee, 368 F.3d at 222-23 (concluding that (M)(i) "does not have a plain and unambiguous meaning, at least not as applied to a conviction under section 7206(1) of the Internal Revenue Code.").

[10]Id. at 223-24.

[11]Id. at 224.

[12]317 U.S. 492 (1943).

[13]Lee, 368 F.3d at 224 (quoting Spies, 317 U.S. at 497).

ambiguities in deportation statutes in favor of the alien.'"[14]

We are persuaded, however, that Congress did not intend to single out tax evasion under 26 U.S.C. § 7201 for inclusion among aggravated felonies to the exclusion of all other tax felonies. We also conclude that subsection 43(M)(i) is unambiguous. Congress may well have seen subsection 43(M)(ii) as a necessary addition to subsection 43(M) since neither fraud nor deceit is a specific element of the crime of tax evasion under 26 U.S.C. § 7201,[15] as both the dissent in Lee and the Ninth Circuit recognized.[16] Moreover, it is difficult to discern why Congress would want only a violation of 26 U.S.C. § 7201 involving $10,000 or more to constitute an aggravated felony, but not tax felonies involving fraud and deceit and the same amount of loss to the Government fisc. Although the maximum term of imprisonment for a violation of § 7201 is five years, while the maximum prison term for a violation of § 7206 is three years, both are serious crimes carrying the same maximum fines.

We respectfully part company with Lee in this regard, including its reliance on Spies v. United States.[17] The Third Circuit reasoned that in Spies the

---

[14]Id. at 224-25 (citing INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987)).

[15]See 26 U.S.C. § 7201 ("Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . .).

[16]Kawashima v. Gonzales, 503 F.3d 997, 1001 (9th Cir. 2007) ("Congress might have wanted to ensure that no court would hold that tax evasion falls outside the definition of an aggravated felony simply because 'fraud' and 'deceit' are not specific elements of that offense."); Lee v. Ashcroft, 368 F.3d 218, 227 (ALITO, J., dissenting) ("[T]he drafters might have been concerned that some courts would hold that tax evasion falls outside the scope of subsection M(i) because neither 'fraud' nor 'deceit' is a formal element of the offense.").

[17]317 U.S. 492 (1943).

Supreme Court described the felony defined in former 26 U.S.C. § 145(b) as "the 'capstone' of tax law violations,"[18] and "[t]hus, for Congress to select tax evasion as the 'aggravated' tax felony, justifying removal of an alien who committed it, while sparing lesser tax felons, is thoroughly consistent with the history and structure of criminal tax offenses."[19] The Spies decision focused on "the acts necessary to make out the felony [under section 145(b) of the Revenue Act of 1936] and those which may make out the misdemeanor [under section 145(a)]."[20] The two provisions were similarly worded.[21] The Supreme Court's references to tax evasion as the "capstone" and the "climax of this variety of sanctions" must be considered in this context, as distinguishing the elements of the misdemeanor offense from those of the felony offense, not as comparing felony tax evasion with other felony tax offenses. Indeed, 26 U.S.C. § 7206 was not enacted until 1954, eleven years after Spies was decided in 1943.

The Supreme Court recently quoted the "capstone" statement that appears in Spies regarding 26 U.S.C. § 7201,[22] but also noted that "26 U.S.C. § 7206(1), criminalizing the willful filing of a tax return believed to be materially false" is "[a] related provision."[23] The Court further observed in Boulware that "it is

---

[18] Lee v. Ashcroft, 368 F.3d 218, 224 (3d Cir. 2004) (quoting Spies, 317 U.S. at 497).

[19] Id.

[20] Spies, 317 U.S. at 497.

[21] See id. at 493-94 nn.1-2.

[22] Boulware v. United States, 128 S.Ct. 1168, 1173 (2008) ("'[T]he capstone of [the] system of sanctions . . . calculated to induce . . . fulfillment of every duty under the income tax law . . . is 26 U.S.C. § 7201, making it a felony willfully to 'attemp[t] in any manner to evade or defeat any tax imposed by' the Code.") (quoting Spies, 317 U.S. at 497).

[23] Id. at 1172 n.1.

arguable that 'the nature and character of the funds received can be critical in determining whether . . . § 7206(1) has been violated, [even if] proof of a tax deficiency [required under § 7201] is unnecessary.'"[24] The Court did not resolve the question, and of course, the Court was not construing 8 U.S.C. § 1101(a)(43(M). But the Court's discussion does support our conclusion that the "capstone" argument advanced by the Third Circuit does not have the import that our sister court ascribes to it.

Other circuit courts have noted, correctly, that under some circumstances, a conviction for a violation of § 7206 may merge into a conviction under § 7201 as a lesser included offense.[25] But the corollary is that merger is not always appropriate. Section 7206 is a separate offense that is "separately punishable" from a violation of § 7201, unless there is also a violation of § 7201 and the § 7206 violation was incidental thereto.

There is no indication in the Tax Code that 26 U.S.C. § 7201, which addresses tax evasion, is the preferred means of prosecuting felony tax offenses. We cannot agree that Congress intended to exclude tax offenses involving fraud

---

[24]Id. at 1178 n.9.

[25]See, e.g., United States v. Dale, 991 F.2d 819, 858 (D.C. Cir. 1993) ("[U]nder appropriate circumstances, lesser section 7206 offenses merge with the 'capstone' prohibition of section 7201."); United States v. Helmsley, 941 F.2d 71, 99 (2d Cir. 1991) ("[W]here false returns 'were incidental step[s] in the consummation of the completed offense of attempted defeat or evasion of tax and as such . . . constituted a crime within [a] crime under the lesser included offense doctrine' then a conviction under Section 7206(1) for filing those false returns merges into a conviction under Section 7201 for the inclusive fraud of tax evasion.") (quoting United States v. White, 417 F.2d 89, 93-94 (2d Cir. 1969) (quoting Gaunt v. United States, 184 F.2d 284, 290 (1st Cir. 1950))); White, 417 F.2d at 94 ("[W]here proof of wilfully attempted evasion under 7201 also proves, as an incident to the wilful evasion, the preparing and subscribing of a fraudulent return, the specific form of fraudulent conduct merges into the inclusive fraud charged under 7201. To cumulate penalties beyond the maximum authorized by 7201 is, therefore improper under these circumstances.").

and deceit from 8 U.S.C. § 1101(a)(43)(M)(i) when it included a specific reference to 26 U.S.C. § 7201 in (43)(M)(ii).

Accordingly, a conviction under 26 U.S.C. § 7206(1) for filing a false tax return constitutes an aggravated felony for purposes of 8 U.S.C. § 1101(a)(43)(M) if that offense involved a loss of $10,000 or more.

### III

Arguelles-Olivares contends there is no evidence that his tax offense involved $10,000 or more because the judgment of conviction does not mention the amount of actual loss. He asserts that it was error to rely on the Pre-Sentence Investigation Report (PSR), prepared in the tax offense proceedings, as evidence of the amount of loss in his immigration proceedings. Arguelles-Olivares asserts that the PSR must be excluded under the "categorical approach" of examining prior convictions and that the PSR's admission into evidence and reliance upon it was problematic for a number of other reasons. We first consider the pertinence of the "categorical approach."

### A

The judgment in the tax offense prosecution does not reference any amount of loss, and the plea agreement in that criminal case was not made part of the record in the immigration proceedings. However, the PSR prepared in connection with Arguelles-Olivares' tax offense conviction states that Arguelles-Olivares' plea agreement determined the total amount of loss to be $248,335 for the years 1996-2000 and detailed the amounts of loss for each of those years.

This court had occasion to consider whether use of a PSR was proper in determining the amount of loss under 8 U.S.C. § 1101(a)(M)(i) in James v.

Gonzales.[26] James had pled guilty to one count involving a transaction with a credit union in the amount of only \$9,500.[27] We held that "[s]ince aiding and abetting bank fraud does not itself define a monetary threshold, we look beyond the statute to the record of conviction."[28] We cited the Third Circuit's decision in Singh v. Ashcroft[29] with approval for the proposition that we are not confined to the formal categorical approach of Taylor v. United States[30] when determining if an offense involved "'loss to the victim or victims [in excess of] \$10,000.'"[31] As explained in this court's decision in James and the Third Circuit's decision in Singh, an amount of loss suffered by a victim is rarely an element of a criminal offense.[32] It seems highly unlikely that Congress intended for 8 U.S.C. §

---

[26]464 F.3d 505, 510-11 (5th Cir. 2006).

[27]Id. at 506-07.

[28]Id. at 510.

[29]383 F.3d 144, 159-61 (3d Cir. 2004).

[30]495 U.S. 575 (1990).

[31]James, 464 F.3d at 510 n.26 ("'We turn now to the cases in which we did not confine ourselves to the formal categorical approach of Taylor. All three such cases . . . concerned 8 U.S.C. § 1101(a)(43)(M)(i). . . . In all three cases, the relevant criminal statute did not include a 'loss greater than \$ 10,000' element. Yet in these cases we expressly rested our holding on the underlying facts about the amount of loss involved. . . . In the case of the enumerating statute, a departure from the formal categorical approach seems warranted when the terms of the statute invite inquiry into the facts underlying the conviction at issue. The qualifier 'in which the loss to the victim or victims exceeds \$10,000' is the prototypical example—it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue.'" (quoting Singh, 383 F.3d at 159-61)).

[32]See n.9, supra; see also Dulal-Whiteway v. U.S. Dep't of Homeland Sec., 501 F.3d 116, 128 (2d Cir. 2007) ("Statutes of conviction rarely correlate precisely with statutes of removability—for example, few statutes criminalizing fraud enumerate distinct violations corresponding to the \$10,000 loss amount required by the removability statute [8 U.S.C. § 1227(a)(2)(C)].").

1101(a)(43)(M)(i) to apply only to convictions under statutes that included a monetary loss to a victim in excess of $10,000 as an element of the offense. For example, Congress itself has not included monetary loss to victims in defining a number of crimes involving fraud or deceit, such as bank fraud.[33] A conviction may be obtained for bank fraud under 18 U.S.C. § 1344 by proving the statutory elements. The amount of loss to the victim is a matter that is considered for sentencing purposes. As a matter of statutory construction, its seems that Congress intended for the inquiry under 8 U.S.C. § 1227(a)(2)(A)(iii)[34] and § 1101(a)(43(M) to be whether, as a categorical matter, the alien was convicted of "an offense . . . that involves fraud or deceit" as an element of the offense or that the offense necessarily entails fraud or deceit.[35] The requirement that the offense was one "in which the loss to the victim or victims exceeds $10,000"[36] is

---

[33]See 18 U.S.C. § 1344, which provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice--
    (1) to defraud a financial institution; or
    (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

See also id. § 152 (concealment of assets, false oaths and claims in bankruptcy); § 286 (conspiracy to defraud the Government with respect to claims); § 472 (uttering counterfeit obligations or securities); § 1010 (fraud and false statements in HUD and FHA transactions); and § 1341 (mail fraud).

[34]8 U.S.C. § 1227(a)(2)(A)(iii) (providing that: "Any alien who is convicted of an aggravated felony at any time after admission is deportable.").

[35]8 U.S.C. § 1101(a)(43)(M)(i) (defining an aggravated felony to include "an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.").

[36]Id.

a factual matter to be determined from the record of conviction, but the amount of loss is not required to be an element of the conviction itself.

We do not quarrel with the dissent's observation that we have applied the categorical or modified categorical approach in the immigration context.[37] We have done so, however, when determining the nature or elements of the offense of conviction[38] but not the amount of loss.[39] The categorical and modified categorical approaches are "standards for establishing the fact of prior convictions, turning on the basis of trial or plea."[40] They are the Supreme Court's "pragmatic conclusion about the best way to identify generic convictions . . . , while respecting Congress's adoption of a categorical criterion that avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction."[41] The modified categorical approach accordingly restricts the documents that may be consulted to determine whether a conviction was for a generic offense, and the focus is, properly, on the conviction.

When the amount of loss to a victim is not an element of an offense, the

---

[37]See, e.g., James, 464 F.3d at 508 & n.16 ("In determining whether an offense qualifies as an aggravated felony under the INA, we employ a categorical approach and look 'at the statute under which the alien was convicted rather than at the particular underlying facts,'" and recognizing "[a]n exception to the categorical approach exists 'when a statute is divisible into discrete subsections, violations of one or more of which would meet the criterion at issue.'") (quoting Omari v. Gonzales, 419 F.3d 303, 307, 308 (5th Cir. 2005)).

[38]See, e.g., id. at 508 (employing the categorical approach to determine "whether the offense of aiding and abetting bank fraud necessarily entails, or has as at least one element, fraud or deceit").

[39]See id. at 510 ("Since aiding and abetting bank fraud does not itself define a monetary threshold, we look beyond the statute to the record of conviction.").

[40]Shepard v. United States, 544 U.S. 13, 19 (2005).

[41]Id. at 20.

11

focus should not be limited to the conviction itself. The amount of loss is relevant in a criminal prosecution primarily, if not exclusively, to sentencing. When a tribunal subsequently examines, for collateral purposes like those here, the amount of loss resulting from an offense, the reason for applying the modified categorical approach does not fully obtain.[42] Our inquiry should be guided by the statute that initiates that inquiry. The Immigration and Nationality Act provides that the government "has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable."[43] The Act further specifies, "No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."[44] We should determine,

---

[42]See generally Conteh v. Gonzales, 461 F.3d 45, 61 (1st Cir. 2006) (rejecting an argument that an amount of loss in a restitution order could not be considered in removal proceedings "because that amount was neither separately charged in the indictment nor found by the jury beyond a reasonable doubt," reasoning "[t]he premise of this argument—that the categorical approach should be transplanted root and branch from the criminal context into the civil removal context—is incorrect.").

[43]8 U.S.C. § 1229a(c)(3)(A).

[44]Id. The INA also addresses proof of a conviction in § 1229a(c)(3)(B):

In any proceeding under this chapter, any of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:
    (i) An official record of judgment and conviction.
    (ii) An official record of plea, verdict, and sentence.
    (iii) A docket entry from court records that indicates the existence of the conviction.
    (iv) Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.
    (v) An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the

therefore, whether there was clear and convincing evidence that Arguelles-Olivares's prior conviction involved an amount of loss greater than $10,000 and whether the evidence establishing that the conviction involved such a loss was reasonable, substantial, and probative. These are the standards that apply in determining whether the BIA erred in relying on the PSR to determine the amount of loss.

We recognize that there is disagreement among the circuit courts as to how the amount of loss involved in a prior criminal conviction may be ascertained in civil removal proceedings. The Ninth Circuit has held that the amount of loss must be admitted by a defendant or found by the trier of fact in the prior criminal prosecution.[45] Similarly, the Second Circuit "permit[s] the BIA to remove only those aliens who have actually or necessarily pleaded [in the underlying criminal proceedings] to the elements of a removable offense," including the greater-than-$10,000-loss requirement.[46] Our court has construed the statute differently, and we believe correctly, in James.[47]

---

sentence.

(vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

(vii) Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

[45]See Li v. Ashcroft, 389 F.3d 892, 897 (9th Cir. 2004) (holding that "if the record of conviction demonstrates that the jury in Petitioner's case actually found that Petitioner caused, or intended to cause, a loss to the government of more than $10,000, the modified categorical approach will be satisfied," but not otherwise).

[46]Dulal-Whiteway v. U.S. Dep't of Homeland Sec., 501 F.3d 116, 133 (2d Cir. 2007).

[47]James v. Gonzales, 464 F.3d 505 (5th Cir. 2006).

Based on the facts of this case, there is clear and convincing evidence that the PSR accurately reflected the amount of loss. An addendum to the PSR reflects that Arguelles-Olivares had no objections to the PSR. The PSR additionallly states that a probation officer interviewed Arguelles-Olivares regarding the report and that Arguelles-Olivares agreed with the chart in the report showing the tax losses by year, including a loss of $75,982 for 1999. The district court adopted the PSR's factual findings. Arguelles-Olivares does not dispute that he agreed to the facts set forth in the PSR including, specifically, the fact that the amounts of loss for each year were part of the plea agreement and that they totaled in excess of $10,000 for each year. Arguelles-Olivares's failure to object to these facts in the PSR, his admission that they were correct, and the district court's adoption of these facts is clear and convincing evidence that the loss to the government was in excess of $10,000.

The dissent cites several decisions in support of its conclusion that the BIA cannot consider a PSR in determining the amount of loss. The first decision on which the dissent relies is Larin-Ulloa v. Gonzales from this court.[48] But that case had nothing to do with an amount of loss. The issue was whether a prior Kansas conviction was a crime of violence within the meaning of 18 U.S.C. § 16(b), specifically, whether "intentionally causing physical contact with another person with a deadly weapon in a rude, insulting or angry manner clearly involves a substantial risk that physical force against another person may be used."[49]

The dissent cites the Second Circuit's decision in Dulal-Whiteway v. U.S.

_____

[48]462 F.3d 456 (5th Cir. 2006).

[49]Id. at 465.

14

Department of Homeland Security, but as discussed above, that circuit has chosen to treat the amount of loss essentially as an element of the underlying conviction. This circuit has not.

The Eleventh Circuit held in Obasohan v. U.S. Attorney General,[50] also cited by the dissent, that an amount of loss must be charged and proven or admitted by the defendant in the underlying criminal proceedings. Although the breadth of that decision is not entirely clear, that court would apparently permit the BIA to rely on a restitution order if a defendant admitted the amount of loss.[51] The First Circuit held in Conteh v. Gonzales, cited by the dissent, that the BIA could rely on a restitution order to determine the amount of loss when "the district court made an explicit finding of the amount of loss as part of its final judgment,"[52] even though that finding may have been based in part on facts in the PSR.[53]

In the final analysis, our circuit's precedent is clear, and with respect, we disagree with the dissent. The PSR could be considered under the circumstances presented here, particularly given that Arguelles-Olivares admitted in the underlying criminal proceedings that the amounts of loss reflected in the PSR were correct.

---

[50] 479 F.3d 785, 791 (11th Cir. 2007).

[51] Id. at 790 ("There was no basis in this record from which the IJ could have found by 'clear, unequivocal and convincing' evidence that the restitution order was based on convicted or admitted conduct.").

[52] 461 F.3d 45, 62 (1st Cir. 2006).

[53] Id. at n.10 ("It is of no consequence that this finding may, in part, have reflected information contained in the PSI Report. After all, findings incorporated in the final judgment routinely are predicated on evidence outside the formal record of conviction.").

B

Arguelles-Olivares contends that there must be proof that the amount of loss exceeded $10,000 in a single tax year.  Even assuming arguendo that this is a correct proposition of law, the threshold was met.

He asserts that the PSR was inadmissible because removal proceedings are prosecutorial in nature and that use of a PSR is incompatable with the purpose of the report as a sentencing and correctional tool.  He additionally asserts that the PSR is confidential and cannot be accessed without leave of court. Arguelles-Olivares made no attempt during the immigration proceedings to seek an injunction or order from the district court to maintain the confidentiality of the PSR.  He did not identify any provisions of the PSR that would jeopardize his own privacy or the government's interest in maintaining the trust of third-party witnesses by keeping the PSR confidential.  There was no abuse of discretion in admitting the PSR.

The record contains evidence that supports the BIA's conclusion that Arguelles-Olivares is an aggravated felon, and we will not vacate that determination.

\*        \*        \*

We DENY the petition for review.

DENNIS, Circuit Judge, dissenting:

I respectfully dissent and would grant the alien's petition for review. In my opinion, the majority incorrectly decides two important immigration law issues, one of them res nova in this Circuit.

When this opinion was originally issued, the majority joined a panel of the Ninth Circuit in splitting from the Third Circuit on whether filing a false tax return in violation of 26 U.S.C. § 7206(1) can constitute an aggravated felony for the purpose of removing an alien from this country. Since then, the Ninth Circuit has withdrawn its original opinion in Kawashima I, Kawashima v. Gonzales, 503 F.3d 997 (9th Cir. 2007), and substituted a new opinion, Kawashima II, Kawashima v. Gonzales, 530 F.3d 1111 (9th Cir. 2008). Kawashima II holds that conviction under § 7206(1) can never be an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(M) and thus can never, alone, give rise to deportability under 8 U.S.C. § 1227(a)(2)(A).[1] Although the

---

[1] Kawashima I, in reasoning similar to that relied on by the majority in this opinion, held that filing a false tax return could be an aggravated felony for purposes of determining an alien's removability. A day after Kawashima I was released, an en banc panel of the Ninth Circuit decided Navarro-Lopez v. Gonzales, 503 F.3d 1063 (9th Cir. 2007) (en banc), in which it held that the modified categorical approach could only be used in determining whether an offense was an aggravated felony when "the particular elements in the crime of conviction are broader than the generic crime." 503 F.3d at 1073. When the crime of conviction is missing an element of the generic crime, the Ninth Circuit held, the crime of conviction can "never be narrowed to conform to the generic crime because the jury is not required . . .to find all the elements of the generic crime." Id. In such cases, the modified categorical approach cannot be used and record of conviction cannot be consulted at all. Id. In the Kawashimas' case, since the Ninth Circuit had consistently held that the $10,000 requirement was an element of the generic crime of (M)(i), and §§ 7206(1) and 7201 do not require the government to prove the amount of loss, the crimes of conviction in that case could never be narrowed to conform to the generic crime, and since the court was not free under Navarro-Lopez to consult the record of conviction to determine the amount of loss caused by the Kawashimas' actions the government had not met its burden of proof and the Kawashimas were not removable. Kawashima II, 530 F.3d at 1118.

Ninth Circuit's new decision is not based on reasoning that impacts that of the majority opinion, its revision nevertheless leaves this Circuit now standing alone in holding that filing a false tax return can be an aggravated felony for purposes of removal. The lack of detailed analysis in the majority's opinion on this matter is now thus all the more troubling. The majority gives no weight whatever to the INA's designation of tax evasion as the sole tax offense explicitly named as an "aggravated felony"; the majority does not even attempt to explain away the sharp clash between its alien-hostile statutory construction and the traditional principle of construing uncertain statutes in favor of aliens.

Second, the majority refuses to follow our circuit precedents that have consistently applied the Supreme Court's Taylor-Shepard "modified categorical approach" in removal cases; instead, it approves the BIA's looking outside the record of the alien's conviction to find an aggravated felony based upon a paper trial of underlying facts contained in his PSR. In so doing, the majority creates a circuit split from the four circuits unanimously holding that such use of PSRs is improper under the Taylor-Shepard modified categorical approach; and it disregards the numerous decisions of our own prior panels consistently applying the Taylor-Shepard methodology in sentencing cases. The majority's second decision is particularly unfortunate because it exposes aliens in this Circuit to the potential of unfair practices, inequality of justice, and deportations based on constructive paper trials without juries rather than on records of judicial convictions.

1.

A.

Joel Arguelles-Olivares was born March 13, 1957, in Mexico. He immigrated to the United States more than thirty years ago and has been a

Permanent Resident Alien since April 6, 1977.[2]  Since then, he has lived in Houston, Texas; Sugarland, Texas; New York City; Round Rock, Texas; Austin, Texas; Hutto, Texas; and Pflugerville, Texas, where he currently resides.  After moving to the United States, Arguelles lived with Laverne Clancy for thirteen years.  Together they have one daughter, who is currently a student at Baylor University in Waco, Texas.  In 1993, Arguelles married Pearl Lavenia Whidden Pfeffer.  Together they have two children, ages five and two, who live with them in their three-bedroom, one-story house.  Mrs. Arguelles has two children from a previous marriage, one of whom lives with them.

Since 1978, Arguelles has been a self-employed masonry contractor.  The record indicates that Arguelles has been financially successful in that capacity and that he regularly employs a number of individuals.  Although the details of the size of his work force and his employees' wages or salaries are not disclosed in the record, the PSR states that in the 2001 tax year he reported a taxable income of $459,390 upon which he paid the correct amount of $175,012 in income taxes.

B.

On April 7, 2003, Arguelles was charged by criminal information in the United States District Court for the Western District of Texas with one count of filing a false income tax return for the 1999 tax year in violation of 26 U.S.C. § 7206(1).  On May 1, 2003, Arguelles pleaded guilty in accordance with a written Plea Agreement to the charge against him.  He was then sentenced on July 8, 2003, to a term of twenty-one months of imprisonment, to be followed by a supervised release term of one year, but he was not fined or ordered to pay any restitution.

On account of this conviction, the Department of Homeland Security

---

[2] Arguelles has two sisters and two brothers, all of whom are naturalized citizens living in Texas. His mother, a United States citizen, lives in Mission, Texas.

("DHS") initiated removal proceedings against Arguelles pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(M). During the proceedings, Arguelles admitted to all of the allegations contained in the DHS's Notice to Appear except that he specifically denied that his conviction resulted in a loss to the victim, in this case the Government, of more than $10,000. The DHS did not introduce the written Plea Agreement into the record of this removal proceeding in order to prove that the amount of loss exceeded $10,000.[3] The DHS did file the charging document, a criminal information, and the judgment of conviction into the record, but none of these instruments discloses how much Arguelles underpaid his 1999 federal income taxes. The criminal information simply states that he underpaid his taxes by a substantial amount. The judgment of conviction merely adjudges him guilty of violating 26 U.S.C. § "7205(1)"[4] by "Making a Subscribing a [sic] False Return" on April 4, 2000. The only document in the record that provides any indication of how much Arguelles underpaid his 1999 federal income taxes is the PSR.[5] Arguelles objected to the inclusion of the PSR into the record of his immigration proceedings, but the IJ admitted it and both the IJ and the BIA

---

[3] The DHS does not explain why it failed to introduce this crucial document into evidence. If the written Plea Agreement discloses clearly that Arguelles underpaid his 1999 taxes by more than $10,000, the DHS's failure to file it has caused this court to expend time and effort unnecessarily on the appeal, the oral argument and the opinion writing on this issue. If the Plea Agreement does not contain clear evidence to this effect, then a serious question is raised as to whether the DHS has dealt fairly with Arguelles and honorably with this court.

[4] This is apparently a typographical error. Section 7206(1) was evidently intended.

[5] The PSR contains the following statements concerning the alleged loss amount: "On May 1, 2003, the defendant pled guilty in accordance with a written Plea Agreement, wherein the Government and the defendant agree that the tax loss for sentencing purposes will include the loss from tax years 1996 through 2000 for a total tax loss of $248,335."; "The IRS determined that the defendant owes $248,335 in unpaid taxes."; and "Restitution in the amount of $248,335 is outstanding . . . ." The PSR also contains a table purporting to show the additional amount of tax that Arguelles-Olivares owed for tax years 1996-2000, which totaled $248,335, including $75,982 for tax year 1999.

relied on statements in the PSR to conclude that Arguelles's conviction involved a loss amount that exceeded $10,000. Both the IJ and the BIA also rejected Arguelles's argument that a conviction for filing a false tax return under 26 U.S.C. § 7206(1) cannot qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i).

Accordingly, the IJ deemed Arguelles removable for being convicted of an aggravated felony and ordered Arguelles removed to Mexico. The BIA affirmed the removal order. As a consequence of being removed for conviction of an aggravated felony, Arguelles will be permanently barred from re-entry to the United States. See 8 U.S.C. § 1182(a)(9)(A)(i)-(ii).

2.

In his petition for review, Arguelles re-urges his argument that no conviction under 8 U.S.C.§ 7206(1) for filing a false tax return can qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(M). When this court released the opinion in the present case, the only two other circuits to have previously considered the issue - the Ninth and the Third - had come to different conclusions. Compare Kawashima v. Gonzales, 503 F.3d 997 (9th Cir. 2007) (Kawashima I) (holding that a violation of § 7206(1) in which the tax loss to the government exceeds $10,000 constitutes an aggravated felony under § 1101(a)(43)(M)(i)), withdrawn, with Ki Se Lee v. Ashcroft, 368 F.3d 218 (3d Cir. 2004) (reaching the opposite conclusion), but see id. at 225 (Alito, J., dissenting). Now that the Ninth Circuit has withdrawn Kawashima I, and substituted for it Kawashima v. Gonzales, 530 F.3d 1111 (9th Cir. 2008) (Kawashima II), this Circuit is alone on one side of a circuit split, with the Third Circuit on the other. In my view, we need not have reached the issue of whether filing a false tax return, in addition to tax evasion, can constitute an aggravated felony for purposes of removal in order to resolve the case. Nevertheless I believe the Third Circuit's reasoning in Ki Se Lee persuasively demonstrates that in enacting §

21

101(a)(43)(M)(i) Congress intended to single out tax evasion as the only tax crime meriting removability. The Third Circuit's decision is well-reasoned and fully comports with the traditional tools used in the holistic endeavor of statutory construction. The majority in the present case appears to abandon these well-established basic principles in reaching the opposite result.

Congress has defined an aggravated felony for the purposes of removability in pertinent part as:

> (M) an offense that –
> (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or
> (ii) is described in section 7201 of title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000.

8 U.S.C. § 1101(a)(43)(M). As explained in great detail by the Third Circuit majority in Ki Se Lee, the juxtaposition of subsections (M)(i) and (M)(ii) - one a general provision encompassing offenses involving "fraud or deceit," and one a specific provision focused solely on tax evasion, both enacted simultaneously in 1996 – suggests, at the very least, an ambiguity as to whether other tax offenses, such as violations of § 7206(1), are covered under the more general (M)(i). See Ki Se Lee, 368 F.3d at 222-25. The majority's brief analysis of the relationship between M(i) and M(ii) is unpersuasive to me. In particular, I find puzzling the majority's attempt, unsupported by any authority whatever, to cabin the language used by Justice Jackson in Spies v. United States, 317 U.S. 492, 497 (1943), and discussed by the majority in Ki Se Lee, 368 F.3d at 224, as relevant only in the context of violations of the Revenue Act of 1936. Spies has not been interpreted so narrowly. See Boulware v. United States, 128 S. Ct. 1168, 1173 (2008) ("'[T]he capstone of [the] system of sanctions . . . calculated to induce . . . fulfillment of every duty under the income tax law,' Spies v. United States, 317 U.S. 492, 497 (1943), is 26 U.S.C. § 7201, making it a felony willfully to

'attemp[t] in any manner to evade or defeat any tax imposed by' the Code"); United States v. Dale, 991 F.2d 819, 858 (D.C. Cir. 1993) (stating that "[t]he Internal Revenue Service sets out a comprehensive scheme prohibiting and punishing tax fraud; section 7201, the 'evasion' provision has been called the 'capstone' of this scheme" and holding that convictions under § 7206 may "merge, as lesser included offenses, into the 'capstone' section 7201 tax evasion convictions"); United States v. Helmsley, 941 F.2d 71, 99 (2d Cir. 1991) (calling § 7201 the "'capstone' of the comprehensive statutory scheme prohibiting and punishing federal tax fraud" and holding that a conviction under § 7206(1) for filing false returns may merge into a conviction under § 7201 "for the inclusive fraud of tax evasion"). This circuit itself has recognized explicitly that tax evasion is "the most serious of all tax offenses." Escobar v. United States, 388 F.2d 661, 665 (1968).

In addition, the gravity of tax evasion as compared to the relatively less serious offense of filing a false tax return is reflected in judicial understandings of the goals of §§ 7206(1) and 7201 - § 7206(1) is in essence a perjury statute, while § 7201 addresses tax evasion. The crimes have different elements and involve different levels of blameworthiness.[6] "Unlike sections 7201 or 7203, section 7206(1) requires the prosecution to prove neither intent to evade payment of taxes nor the existence of any taxable income. . .. [T]he section requires simply that the government prove that defendant willfully made and subscribed a return, that it contained a written declaration that it was made under penalties of perjury, and that defendant did not believe the return to be

---

[6]To establish a violation of § 7206(1) the government must prove that: 1) the accused willfully made and subscribed to a tax return, 2) the return contained a written declaration that it was made under penalties of perjury, and 3) the accused did not believe that the return was true as to every material matter. United States v. Loe, 262 F.3d 427, 435 (5th Cir. 2001). To establish a violation of § 7201 the government must prove: 1) a tax deficiency, 2) an affirmative act constituting an evasion or attempted evasion of the tax, and 3) willfulness. United States v. Hildenbrand, 527 F.3d 466, 479 (5th Cir. 2008).

true and correct as to every material matter." United States v. Taylor, 574 F.2d 232, 234 (5th Cir. 1978). See also, e.g., United States v. Beasley, 519 F.2d 233, 245 (5th Cir. 1975) (noting that the purpose of § 7206(1) is to "impose penalties for perjury upon those who willfully falsify their returns regardless of the tax consequences of the falsehood" while the purpose of § 7201 is to prosecute tax evasion), vacated and remanded on other grounds, Beasley v. United States, 425 U.S. 956 (1976); United States v. Tarwater, 308 F.3d 494, 506 (6th Cir. 2002) (characterizing § 7206(1) as a "perjury statute"); United States v. Hajecate, 683 F.2d 894, 902 (5th Cir. 1982) (calling § 7206(1) "the perjury statute of the [Internal Revenue Code]"). There is a significant difference in culpability and potential harm to the government between § 7201's element of an affirmative act constituting an attempted evasion or defeat of the tax or its payment and § 7206(1)'s element of making and subscribing a return which the person does not believe to be materially true and correct. Congress chose to criminally punish tax evasion more severely than filing a false return; and it is reasonable to infer that Congress intended that the stigma of removal attach to tax evasion but not to false return filing.

Furthermore, the Supreme Court and this Circuit have consistently recognized "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987); see also INS v. St. Cyr, 533 U.S. 289, 320 (2001); INS v. Errico, 385 U.S. 214, 225 (1966) ("'[S]ince the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.'" (quoting Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948)); Martinez v. Mukasey, 519 F.3d 532, 544 (5th Cir. 2008) (quoting Cardoza-Fonseca and explaining that "[t]his canon of construction, comparable to the rule of lenity in criminal cases, is based on the drastic nature of removal"); Banda-Ortiz v.

Gonzales, 445 F.3d 387, 396 (5th Cir. 2006) (Smith, J., dissenting) ("Though the majority finds this weight of authority insufficient, it might at least, out of comity, acknowledge the merit of the competing position by applying the 'longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.'").

In light of the weighty matters of statutory history, construction, and interpretation involved I believe, at minimum, this issue requires a more encompassing analysis than that offered in the majority opinion - particularly now that this Circuit stands alone on this aggravated felony issue, which has such serious consequences for aliens and their families.

3.

Title 8, Section 1227(a)(2)(A)(iii) of the United States Code renders removable "[a]ny alien who is convicted of an aggravated felony at any time after admission." Title 8, Section 1101(a)(43)(M)(i) of the United States Code defines "aggravated felony" as, inter alia, an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Arguelles was convicted of filing a false tax return in violation of 26 U.S.C. § 7206(1), which provides:

> Any person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

Assuming arguendo the applicability of 8 U.S.C. § 1101(a)(43)(M)(i) to violations of 26 U.S.C. § 7206(1), Arguelles contends that his record of conviction fails to establish that the loss to the victim of his crime exceeded $10,000. In particular, he argues that it was error for the IJ to consult the PSR,

which indicated that the loss to his victim, the Government, was $75,982, because it should not have been considered part of his record of conviction. I agree that relying upon these materials to prove that Arguelles was convicted of causing a loss greater than $10,000 violated the modified categorical approach to determining aliens' removability based on criminal convictions.

My conclusion necessarily follows from our Circuit's precedent in this area. We have stated that "[t]o determine whether an alien's guilty plea conviction constitutes an aggravated felony for removal purposes, we apply a 'categorical approach,' under which we refer only to the statutory definition of the crime for which the alien was convicted (rather than attempt to reconstruct the concrete facts of the actual criminal offense) and ask whether that legislatively-defined offense necessarily fits within the INA definition of an aggravated felony." Larin-Ulloa v. Gonzales, 462 F.3d 456, 463 (5th Cir. 2006); see also Fortes v. Mukasey, No. 06-61002, 2007 WL 4259302, at *3 (5th Cir. Dec. 5, 2007) (unpublished); Omari v. Gonzales, 419 F.3d 303, 307 (5th Cir. 2005) (citing Lopez-Elias v. Reno, 209 F.3d 788, 791 (5th Cir. 2000)); Nguyen v. Ashcroft, 366 F.3d 386, 388 (5th Cir. 2004). We do not consider the underlying facts that resulted in the alien's conviction. Fortes, 2007 WL 4259302, at *3 (citing Larin-Ulloa, 462 F.3d at 463).

We adopted this methodology in the immigration context because of its analogous roots in Taylor v. United States, 495 U.S. 575 (1990), and Shepard v. United States, 544 U.S. 13 (2005), two sentencing cases in which the Supreme Court described the basic structure and underlying rationales of the modified categorical approach. See Larin-Ulloa, 462 F.3d at 463-64; Dulal-Whiteway v. Dep't of Homeland Sec., 501 F.3d 116, 124 (2nd Cir. 2007). Among the considerations that led the Taylor court to conclude that a categorical approach to prior convictions was necessary were concerns about the practical difficulties and fairness problems that would arise if courts were permitted to consider the

facts behind prior convictions.[7]   The Taylor court noted that a fact-based approach to prior convictions would potentially require federal courts to relitigate a defendant's prior conviction in any case where the government alleged that the defendant's actual conduct fit the definition of a predicate offense.  Taylor, 495 U.S. at 601; see also Tokatly v. Ashcroft, 371 F.3d 613, 621 (9th Cir. 2004) (noting the "fundamental principle" that "in determining whether a prior conviction constitutes a predicate offense, we must avoid 'the enormous problems of re-litigating past convictions, especially in cases where the defendant pleads guilty and there is no record of the underlying facts'") (quoting United States v. Castillo-Rivera, 244 F.3d 1020, 1022 (9th Cir. 2001)).   The Taylor court also recognized the unfairness that could result if a factual approach was applied to prior guilty plea convictions:

> [I]n cases where the defendant pleaded guilty, there is often no record of the underlying facts.  Even if the Government were able to prove those facts, if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.

Taylor, 495 U.S. at 601-02.

However, as we explained in Larin-Ulloa, the categorical approach is not absolute.  462 F.3d at 464.  "If the statute of conviction defines multiple offenses, at least one of which does not describe an aggravated felony, we apply a modified categorical approach, under which we may also examine certain additional documents (if contained in the record framing the guilty plea conviction) to determine whether the conviction was 'necessarily' for a particular crime defined

---

[7] The Taylor court also emphasized that the language of 18 U.S.C. § 924(e) supported a categorical approach because its sentence enhancement provisions are triggered by prior convictions and not by the fact that the person has previously committed an offense.  See Taylor, 495 U.S. at 601.  This rationale applies equally to the INA's provision concerning aggravated felonies.  See 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); Larin-Ulloa, 462 F.3d at 464 n.8.

by the statute that meets the aggravated felony criterion." Id. (citing Shepard v. United States, 544 U.S. at 13, 20-21, 26; Omari, 419 F.3d at 308); see also Dickson v. Ashcroft, 346 F.3d 44, 48-49 (2d Cir. 2003) ("In reviewing a conviction under a divisible statute, the categorical approach permits reference to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal."). In the case of guilty plea convictions under such a divisible statute, we may consider, in addition to the language of the statute, the "'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" Omari, 419 F.3d at 308 (quoting Shepard, 544 U.S. at 16). The use of these documents is permitted because they are considered sufficiently conclusive and reliable to establish the facts to which the alien actually pleaded guilty. See Shepard, 544 U.S. at 23 (stating that evidence of facts should be "confined to records of the convicting court approaching the certainty of the record of conviction"). "Documents not of that kind, including police reports and complaint applications, may not be considered." Omari, 419 F.3d at 308. If the documents that we may consider under the modified categorical approach are insufficient to establish that the petitioner was necessarily convicted of an aggravated felony, we must find that "the government has not met its burden of proving that the conduct for which the petitioner was convicted constitutes a predicate offense, and the conviction may not be used as a basis for removal." Tokatly, 371 F.3d at 620; see Omari, 419 F.3d at 309 (same).

The analogous statutory structures in the sentencing and deportation contexts, as well as the reasoning of Taylor and Shepard, justify the use of the categorical approach to determine removability vel non. See Dulal-Whiteway, 501 F.3d at 125 (citing Ming Lam Sui v. INS, 250 F.3d 105, 116-17 (2d Cir. 2001)). "[L]ike the burglary sentencing enhancement, the Immigration and

28

Nationality Act ("INA"), 8 U.S.C § 1227(a)(2)(A)(iii), rendered removable 'an alien who has been 'convicted' of an aggravated felony, not one who has 'committed' an aggravated felony.'" Id. (citing Sui, 250 F.3d at 117). Moreover, "nothing in the legislative history suggested a factfinding role for the BIA in ascertaining whether an alien had committed an aggravated felony, just as, in Taylor, nothing suggested such a role for the sentencing court in evaluating the factual basis of a prior burglary conviction." Id. at 126. Further, the practical evidentiary difficulties and potential unfairness associated with looking behind the offense of conviction are "no less daunting" in the immigration than in the sentencing context. Id. Finally, given the exception in Taylor, when a statute of conviction criminalizes both conduct that would constitute a removable offense and conduct that would not, IJs might appropriately consult an indictment or jury instructions to determine the basis of an alien's conviction, but IJs cannot look behind the record of conviction to reach their own determination as to whether the underlying facts constitute a conviction for an aggravated felony. See id.; Sui, 250 F.3d at 117-18 (quoting Lewis v. INS, 194 F.3d 539, 543 (4th Cir. 1999)). Accordingly, like the Second Circuit, see id., this Court has applied the modified categorical approach as a two-step inquiry: first, we determine if the statute describes multiple offenses such that some categories of proscribed conduct render an alien removable and some do not; second, we consult the record of conviction to ascertain the category of conduct of which the alien was convicted. Larin-Ulloa, 462 F.3d at 467-68; Omari, 419 F.3d at 308.

Assuming arguendo that filing a false tax return can qualify as an aggravated felony under M(i), 26 U.S.C. § 7206(1), the statute criminalizing filing a false tax return, would then describe offenses that both could and could not give rise to removability. Although § 7206(1) applies when the perpetrator files a tax return that he does not believe to be true and correct, under 8 U.S.C. § 1101(a)(43)(M)(i), such action would be a removable offense only when the

conviction involves a loss to the victim or victims in excess of $10,000. Thus, § 7206(1) would provide grounds for some convictions that do not authorize removal - those involving loss to the victim or victims not exceeding $10,000, and some convictions that do - those involving loss to the victim or victims that exceeds $10,000. Accordingly, in the present case we must consult the record of conviction to determine, if possible, whether Arguelles's conviction involves loss to the victim or victims in excess of $10,000.

Under the Taylor-Shepard modified categorical approach, which our circuit's removal precedents have heretofore followed, we have concluded that the BIA's consultation of the PSR as proof of the specific facts underlying the petitioner's prior conviction was improper. See Larin-Ulloa, 462 F.3d at 468; cf. Omari, 419 F.3d at 308 (PSR not considered part of the record of conviction). In Larin-Ulloa, we held that a "sentencing factor notation is not the type of documentary evidence to which this court or the BIA may refer, under the modified categorical approach as prescribed by Shepard, to determine the nature of an alien's guilty plea conviction." 462 F.3d at 468. We further concluded that "[u]nlike the charging document, the guilty plea, or the factual basis for the plea confirmed by the defendant, sentencing reasons and factors do not simply define the charge and the defendant's guilty plea, but, instead, frequently refer to facts neither alleged nor admitted in court." Id. at 468-69. Other than for its possible use to prove the existence of a conviction, see 8 U.S.C. § 1229a(c)(3)(B)(vi),[8] such

---

[8] Section 1229a(c)(3)(B) provides:

(B) Proof of convictions. In any proceeding under this chapter, any of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:
    (i) An official record of judgment and conviction.
    (ii) An official record of plea, verdict, and sentence.
    (iii) A docket entry from court records that indicates the existence of the conviction.
    (iv) Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

a report simply is not a part of the formal record of conviction. Id. at 468. This conclusion is further supported by our sentencing cases, in which we have consistently said that a district court may not rely on the PSR's characterization of the offense for enhancement purposes. See United States v. Bonilla-Mungia, 422 F.3d 316, 320-21 (5th Cir. 2005) (holding that Shepard does not permit a court to consider factual narrative in probation officer's PSR), cert. denied, 546 U.S. 1070 (2005); United States v. Garza-Lopez, 410 F.3d 268, 273-74 (5th Cir. 2005) (same), cert. denied, 546 U.S. 919 (2005); cf. Shepard, 544 U.S. at 20-23 (precluding the use of a police report to prove the underlying facts of the putative predicate offense). Moreover, that Arguelles may not have objected to the PSR's factual findings[9] and the district court adopted them for sentencing purposes are irrelevant to determining whether Arguelles's conviction was for removable, as opposed to non-removable, conduct because the PSR "typically describes conduct that demonstrates the commission of an offense even if the alien was never convicted for that activity" and may contain inaccurate, unproven, and

---

(v) An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.
(vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.
(vii) Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.


[9] The majority's characterization of Arguelles as having agreed to certain facts relating to the loss amount for the 1999 tax year is supported only by self-serving references to the probation officer's statements in the PSR and its addendum. The majority does not – because it cannot – point to any statement in the record of conviction by which Arguelles admitted to or failed to object to the factual statements contained in the PSR, as the Government did not include a transcript of the plea colloquy or the sentencing hearing in the immigration record, in addition to not including the Factual Basis and Plea Agreement.

31

inadmissible facts.[10]  Dickson, 346 F.3d at 54 (emphasis in original).

Accordingly, the government's argument that a PSR is properly considered among the record of conviction materials, such that the IJ could rely upon the loss amount it described, is foreclosed by Larin-Ulloa.  Cf. Omari, 419 F.3d at 308 (PSR not considered part of the record of conviction).  The IJ therefore improperly relied on statements set forth in Arguelles's PSR to establish the loss amount for the 1999 tax year.  Accord Dulal-Whiteway, 501 F.3d at 129 ("The government's argument that a PSR is properly considered among [the modified categorical approach's permissible] materials, such that the IJ could rely upon the loss amount it described, is foreclosed by Dickson [v. Ashcroft, 346 F.3d 44, 52-55 (2d Cir. 2003)], where we rejected a virtually identical claim."); Obasohan v. United States Attorney General, 479 F.3d 785, 789-91 (11th Cir. 2007) (holding that an IJ was not entitled to rely on loss amounts that were alleged only in a PSR); Conteh v. Gonzales, 461 F.3d 45, 58 (1st Cir. 2006) ("We reject the government's argument: the BIA's consultation of the PSI Report as proof of the specific facts underlying the petitioner's prior conviction was improper.  Other than for its possible use to prove the existence of a conviction, such a report simply is not a part of the formal record of conviction." (emphasis in original) (citations omitted)); Hernandez-Martinez v. Ashcroft, 343 F.3d 1075, 1076 (9th Cir. 2003) (holding that a PSR is "insufficient evidence" to show that an alien's conviction constitutes an aggravated felony) (citing United States v. Corona-Sanchez, 291 F.3d 1201, 1212 (9th Cir. 2002) (en banc)).[11]

---

[10] Here, the PSR's "proof" of Arguelles's 1999 tax year liability amounts to nothing more than an unsourced and unverified chart that is not accompanied by IRS documents or raw data that provide any indication as to how these numbers were calculated or even who specifically performed the calculations.

[11] In a strong dissent to a recent Third Circuit decision allowing consultation of a sentencing stipulation to establish M(i)'s $10,000 loss requirement, Judge Stapleton noted that ""[t]his Court has never before found an alien deportable for conduct the alien was neither convicted of nor pled guilty to; the Court's approach, therefore, will significantly expand the

Finally, the majority's holding is not, as the majority states, compelled by James v. Gonzalez, 464 F.3d 505 (5th Cir. 2006). James, in my opinion, does not represent a clear holding on anything in particular, but should be restricted as precedent to its facts and reconsidered en banc. There, the panel affirmed the BIA's determination that the loss to James's victims exceeded $10,000 for purposes of satisfying § 1101(a)(43)(M)(i)'s monetary threshold, but its conclusion was based on a mixture of factors, including some not present in this case, such as an indictment that charged a scheme of aiding and abetting, with three counts totaling $36,450, and a restitution order in an amount that exceeded $10,000. Nowhere does James hold that it is appropriate to deviate from the modified categorical approach to determine whether the amount of loss under § 1101(a)(43)(M)(i) exceeded $10,000, and it certainly does not state that statements contained in a PSR, without more, are sufficient under the modified categorical approach to reach such a determination as to the amount of loss. Furthermore, James does not even address any of the authorities or principles discussed in this dissent. It is well-established that "we are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated." Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 363 (2006) (citing Cohens v. Virginia, 19 U.S. 264, 399-400 (1821)). Rather, careful discussions of the relevant Supreme Court cases and principles, plus the holdings in Larin-Ulloa, Omari,

---

reach of the INA's 'aggravated felony' provisions . . . ." Nijhawan v. Attorney General, 523 F.3d 387, 403 (3rd Cir. 2008) (Stapleton, J., dissenting).

The Supreme Court recently granted certiorari in Nijhawan, Nijhawan v. Mukasey, --- S.Ct. ----, 2009 WL 104300, 77 USLW 3252 (U.S. Jan 16, 2009) (NO. 08-495), to resolve the deeply contested issue of which, if any, documents outside the record of conviction may be consulted in determining whether an alien was convicted of the $10,000 loss required by M(i). The Supreme Court's decision may ultimately impact cases such as Arguelles's, but it is not necessary or appropriate for me to predict or anticipate the Court's decision in that case. Accordingly, I dissent from the majority's decision here because of its departure from our circuit precedents, which are in turn based on the Supreme Court's decisions in Taylor and Shepard.

and our sentencing cases, are more persuasive to me because those sources deal directly with what I have discussed in this dissent.

In sum, as a result of the Government's failure (purposeful or otherwise) to place the Plea Agreement into the immigration record, we are left with an insufficient record of conviction by which to conclude that Arguelles was necessarily convicted of an aggravated felony and is now subject to removal. I would thus grant Arguelles's petition for review and vacate the BIA's order of removal.

4.

For these reasons, I respectfully dissent.